CYRUS D. CURTIS *vs.* WILLIAM ASPINWALL.
WILLIAM ASPINWALL *vs.* CYRUS D. CURTIS.

By-bidding at an auction sale, advertised "to be positive," of land in lots, will render the sale voidable by a purchaser influenced by such bidding, whether that bidding was upon the lot purchased by him or upon lots previously offered, even though such bidding was instigated by the auctioneer without the seller's knowledge; but if it appears that he was not so influenced the sale is valid.

Land, that, without the owner's knowledge, was under attachment, was sold by auction, ten days being "allowed to examine the title, within which time the property must be settled for at the office of the auctioneer." The attachment was not discharged within the ten days, but within that time the purchaser had written to the auctioneer, declining "to proceed further in the matter," as he considered "the whole proceeding invalid." In an action against the purchaser for a refusal to complete the contract, *Held,* that, as the vendor was bound to give a good title only upon compliance with the terms of the sale within ten days, the purchaser's letter was a waiver of his right to object to the attachment as an incumbrance.

Land was sold by auction, a sum of money to be paid "on the spot, which will be forfeited to the seller if the terms and conditions are not complied with, but the forfeiture of said money does not release the purchaser from the obligation to take the property." In an action against the purchaser for not taking the property, *Held,* that the money paid at the sale should be considered by the jury in reduction of damages.

ACTIONS OF CONTRACT tried together. The plaintiff in the first action sought to recover damages of the defendant for the

non-performance of an agreement to complete the purchase of certain lots of land bid off by him at an auction sale. The plaintiff in the second action, being the defendant in the first action, sought to recover back the money paid by him as a deposit at the sale.

At the trial in the Superior Court, before *Pitman*, J., it appeared that June 6, 1871, Curtis, being the owner of land in Brookline, to which he had acquired title March 31, 1868, divided it into eighteen lots, and caused them to be offered for sale by auction by A. R. Walker & Co., auctioneers. Aspinwall was present, and the other lots having been bid off by other persons present, he bid off the remaining five lots, and signed on the spot an agreement with the auctioneers to take and pay for them according to the terms of sale, and paid down the sum of $125.

The material portion of those terms was as follows :

" Three quarters of the purchase money may remain as a power of sale mortgage for three years, at 7 per cent. interest per annum, payable semi-annually, or the whole or any greater part may be paid on the delivery of the deed. Ten days will be allowed to examine the title, within which time the property must be settled for at the office of the auctioneer, No. 48 Winter Street, Boston. One hundred dollars on the house, and twenty-five dollars on each lot will be required of the purchasers on the spot, which will be forfeited to the seller if the terms and conditions are not complied with ; but the forfeiture of said money does not release the purchaser from his obligation to take the property. The value of the insurance policies now on the property must be paid by the purchaser of the houses. Taxes for the present year are to be paid by Mr. Curtis. The property is now mortgaged for about $2,500, which may remain if the estate is purchased as a whole. Lot No. 1, with the buildings thereon, will be offered first, giving the purchaser the privilege of the remaining lots at three cents per foot · should the purchaser elect to take no more land at the price given, it will then be offered, giving the highest bidder his choice of one or more lots ; and all lots that are sold will be released as soon as when desired."

Attached to the agreement and terms of sale was the following extract from the advertisement:

" The owner of the above property, Mr. C. D. Curtis, having made his arrangements to settle permanently in California, the sale will be positive."

On January 17, 1871, all Curtis's real estate had been attacked on mesne process, without his knowledge at the time, in an action against him for a debt of upwards of $3,000 due from him to the Brighton National Bank; and the attachment remained in force till after the bringing of the present actions.

No disclosure of the existence of the attachment was made in any advertisement of the sale, or to the company present, or to the purchasers at the time of sale. Curtis testified at the trial that he had no actual knowledge or information of the attachment until after the expiration of the ten days allowed by the terms and conditions of sale to purchasers to examine the title.

Aspinwall received from the auctioneers the following letters:

" Boston, June 13, 1871. Wm. Aspinwall, Esq.: Dear Sir,— Please advise us by return mail if you wish three quarters of the purchase money to remain on mortgage, as per terms of sale. Yours, &c., A. R. Walker & Co."

" Boston, June 15, 1871. Wm. Aspinwall, Esq.: Dear Sir,— I am uncertain if I wrote you asking if you would like to pay all cash. Please advise me, and excuse second letter, should this prove to be. Yours, &c., A. R. Walker & Co."

To these letters Aspinwall replied as follows:

" 42 and 44 Court Street, June 16, 1871. Messrs. A. R. Walker & Co.: Gentlemen,—Your notes to Mr. Aspinwall came to his hand last week and this morning. We are instructed by Mr. Aspinwall to say he shall decline to proceed further in the matter referred to, as he considers the whole proceeding invalid. Respectfully your obedient servants, Hodges & Barrett, Att'ys for W. Aspinwall. P. S. — Will you please accept notice that Mr. A. will expect a return of the moneys paid by him."

Aspinwall, in support of a ground of defence set up in his answer, to the effect that Curtis employed by-bidders and caused fictitious bids to be made at the sale, and particularly at the sale

of the lots struck off to him, of which he had no knowledge at the time, and by which he was deceived and induced to bid, offered evidence tending to show such by-bidding, or fictitious bids, upon other of the lots embraced in the sale than those bid off by him. There was no evidence offered of by-bidding on the lots struck off to him, and the judge excluded the evidence offered as incompetent.

The counsel for Aspinwall requested the court to rule :

" That upon the foregoing facts and evidence, the plaintiff in the first action had no legal ground of action against him, and that, as plaintiff in the second action, he was entitled to recover back the money paid down by him at the sale.

" That the agreement was, by its terms or by the construction the law puts upon its terms, for an unincumbered title. That it required Curtis to exhibit on record, or to have such title, with the exception of the mortgage, disclosed, at all times during, or at least at some time within, the period allowed by the agreement for the examination of the title.

" That the existence of the attachment, undisclosed by Curtis, entitled Aspinwall to treat the sale as invalid and not binding on him.

" That the case presented was not one of mutual agreement, to be performed simultaneously, but one where Curtis's agreement in respect to title was to be made good before Aspinwall was required to take any step towards performance.

" That the letter of June 16, 1871, was immaterial, being only notice that Aspinwall declined to do what he was not bound to do."

The presiding judge declined to rule as above requested, but for the purposes of the trial ruled adversely to the defendant in the first action, and to the plaintiff in the second, upon all the points embraced in the requests.

The presiding judge, among other instructions not objected to, instructed the jury that if they were satisfied that during the ten days allowed by the terms and conditions of sale to examine the title, Curtis, having the present ability to do so, was ready and willing to comply with all his obligations under the agreement

and to discharge all incumbrances, and but for the letter of June 16, 1871, the defendant might have had a clear title upon demand, then Curtis was entitled to recover in both actions.

The judge also instructed the jury that the $125 paid down at the sale was to be regarded (in case they found for Curtis) as a forfeit, and not as such a credit as would reduce his damages in the first action.

The jury found a verdict for Curtis in both actions.

Aspinwall filed a motion for a new trial, alleging among other grounds that the verdict was against evidence, and that even under the instructions of the court it was clear as matter of law, that, in view of the admitted ignorance of the plaintiff of the existence of the attachment, he could not have been ready and willing to discharge it. But the court, for the purpose of presenting all the questions of law to the Supreme Judicial Court, held otherwise, and overruled the motion, and Aspinwall alleged exceptions.

*E. F. Hodges & J. F. Barrett*, for Aspinwall.

*J. Nickerson*, for Curtis.

MORTON, J. There is some diversity in the decisions, as to the circumstances under which by-bidding will invalidate a sale at auction. But it is clear, both upon principle and the weight of the authorities, that when the sale is advertised or stated to be without reserve, the secret employment by the seller of puffers or by-bidders renders the sale voidable by the buyer. *Phippen* v. *Stickney*, 3 Met. 384, and cases cited. *Towle* v. *Leavitt*, 3 Foster, 360. *Veazie* v. *Williams*, 8 How. 134. *Thornett* v. *Haines*, 15 M. & W. 367.

The offer of property at auction without reserve is an implied guaranty that it is to be sold to the highest bidder, and each bidder has the right to assume that all previous bids are genuine. The seller in substance so assures him, and the secret employment by the seller of an agent to make fictitious bids is equivalent to a false representation by him, as to a matter in which he is bound to speak the truth, and act in good faith. The real bidder is deceived, and the price is enhanced, by artifice and false pretences. In the case at bar the seller stated in his adver-

tisement that " the sale will be positive." This is equivalent to stating that it would be without reserve, and we think that the evidence offered by the buyer of by-bidding at the auction sale should have been admitted. Though his offer was to show by-bidding upon the other lots embraced in the sale, and not upon the lots bid off by him, the principle is the same. The sale was of a large piece of land cut up into small lots. The sales of all the lots were on the same day and were parts of the same transaction. Any artifice or fraud used to deceive the bidders, and to enhance the price of the lots first sold, would tend to fix the apparent value of all the lots, and to mislead the judgment of the real bidders upon the lots afterwards sold. As the purchase by the buyer in this case was of the last lots sold, it was competent for him to show that the seller secretly procured fictitious bids to be made upon the lots previously sold, and that he was deceived and misled thereby. There must, therefore, be a new trial in both the suits. If the buyer succeeds in proving his allegation of the seller's fraud by employing by-bidders, the seller cannot maintain his action against him, and he is entitled to recover back the deposit paid to the auctioneer. *Thornett* v. *Haines, ubi supra.*

Another question is presented by this bill of exceptions which it is proper to consider, as it will arise upon another trial.

It appears that at the time of the sale there was an attachment upon the land sold, in a suit against Curtis, which was not discharged until after Curtis's suit was brought. It was not known to Curtis until after the ten days named in the conditions of sale had elapsed. It does not appear whether it was known to Aspinwall or not. It is contended that this defeats Curtis's right to maintain his action.

By the fair construction of the contract Curtis was required to convey to the purchaser the land with an unincumbered title. The provision that the purchaser was to have ten days to examine the title, implies that he was not bound to take it unless he could have a good title. *Richmond* v. *Gray*, 3 Allen, 25. *Packard* v. *Usher*, 7 Gray, 529, *Mead* v. *Fox*, 6 Cush. 199.

But the contract does not stipulate that the land was free from incumbrance at the time of the sale, and all that Curtis was required to do was to give the purchaser a good title upon his complying with the terms of the sale within ten days. Instead of offering to perform his contract, Aspinwall, on the 16th of June, wrote a letter to the auctioneer declining to perform it, on the ground that " he considers the whole proceeding invalid." We think this was a waiver of his right to object that there was an incumbrance upon the land. It was an absolute refusal to perform on other grounds, and excused Curtis from tendering a deed or discharging the incumbrances so as to be in a condition to convey a good title. *Carpenter* v. *Holcomb*, 105 Mass. 280.

The attachment was an incumbrance, which the examination of the title would disclose, and which Curtis could have discharged, if he had notice that an objection was made on that account. Aspinwall, having broken his contract by an absolute refusal to perform on the ground that the sale was void on account of by-bidding or for some other reasons, cannot now defend on the ground of an incumbrance subsequently discovered, but must be held to have waived any objections which it was in the power of Curtis to remedy. *Brewer* v. *Winchester*, 2 Allen, 389. *Howland* v. *Leach*, 11 Pick. 151.

We are of opinion, therefore, that the ruling of the presiding judge that Curtis was entitled to recover if the jury were satisfied that he had the present ability and was ready and willing to discharge all incumbrances, and that but for the said letter of June 16, Aspinwall might have had a clear title on demand, was sufficiently favorable to Aspinwall.

We are also of opinion that the ruling on the question of damages was erroneous. Curtis, if he prevails, is entitled to recover compensation for all the loss he has sustained by reason of the refusal by the defendant to perform the contract. The one hundred and twenty-five dollars paid by the defendant as a deposit should be considered by the jury in reduction of damages, because its necessary effect is to reduce the loss sustained by Curtis.

*Exceptions sustained.*

A new trial was had in the Superior Court, before *Allen*, J. when Aspinwall introduced evidence that when the lots bid off by him were offered for sale, Curtis secretly procured an agent to bid, as a by-bidder, against him ; that such agent did bid several times without his knowledge at the time, in consequence of which he, Aspinwall, increased his bids higher than he would otherwise have done, and that the lots were struck off to him at the highest price he thus bid.

He also introduced evidence that some of the other lots previously offered for sale were struck off in the name of a fictitious person by the auctioneer, who procured a friend to personate such fictitious person and to sign a fictitious name to the contract of sale, for the benefit of Curtis, and that the sale of these lots was not a real but a fictitious sale, and that this was made known to Curtis by the auctioneer immediately after the sale.

Curtis introduced evidence to disprove all this testimony on every point.

Aspinwall testified that he witnessed the entire sale ; that he had no suspicion even, at the time, that any of the bids or sales were not genuine, and on his cross-examination testified, " I should not have made a bid had I not supposed it was a good speculation. I did not at the time think of anything being dishonest about it. I thought it was a good purchase at the time."

Curtis asked the court to rule " that Aspinwall must show that Curtis was a party to the fraud, if any is proved, and that he, Aspinwall, suffered by reason of the fraud ; that if Walker acted fraudulently without the knowledge or consent of Curtis, Curtis would not be liable for his, Walker's, acts ; that if Aspinwall shows a by-bidding upon any of the lots, he must prove that his bids were based on them, or were influenced by them, and that he suffered by them."

But the judge declined so to rule, and ruled that it was not necessary to prove that Curtis knew of any fraud or by-bidding ; that the acts of the auctioneer must be taken and considered as the acts of Curtis, even if Curtis was entirely ignorant of any such by-bidding or fraud on the part of the auctioneer ; that any by-bidding on the lots previously sold, where the sale was adver-

tised to be positive, though there was none on the lots bought by Aspinwall, would be sufficient to invalidate the sale ; that if the jury find there was by-bidding on any of the lots, either those previously offered for sale or those bid off by Aspinwall, it was not necessary for them to inquire whether the bids of Aspinwall were influenced by such bids or not.

The jury returned a verdict for Aspinwall in both cases, and Curtis alleged exceptions, which were argued in November, 1875, by the same counsel.

MORTON, J. The verdict of the jury establishes the fact that at the auction sale there was secret by-bidding procured either by Curtis or by the auctioneer employed by him. An auctioneer is the agent of the person who employs him to sell. From the nature of his business he is the agent of the buyer for the single purpose of binding him by a memorandum in writing to satisfy the statute of frauds, but in all other respects he is the agent of the seller. If while acting in the business of his principal he commits a fraud, of which the principal has the benefit, the latter is responsible for it. He cannot insist upon the benefit of a sale and repudiate the fraudulent acts of his agent which were a part of it. *Fogg* v. *Griffin*, 2 Allen, 1. *Veazie* v. *Williams*, 8 How. 134. It follows that the ruling of the court, that it was not necessary to prove that Curtis knew of any by-bidding, but that the acts of the auctioneer must be regarded as the acts of Curtis, was correct.

At the last trial there was evidence tending to show by-bidding, both upon the lots bid off by Aspinwall, and upon the lots previously sold ; and Curtis asked the court to rule " that if Aspinwall shows a by-bidding upon any of the lots, he must prove that his bids were based on them, or were influenced by them, and that he, Aspinwall, suffered by them." The court refused this ruling, and instructed the jury that if they found " there was by-bidding on any of the lots, either those previously offered for sale, or those bid off by Aspinwall, it was not necessary for them to inquire whether the bids of Aspinwall were influenced by such bids or not."

This presents a question which was not raised at the former hearing of this case. The only point then adjudicated upon this part of the case was that evidence, offered by Aspinwall, that Curtis employed puffers or by-bidders in the sale of the lots previously offered for sale was admissible. The conclusion of the court upon this question is stated to be, that "it was competent for him to show that the seller secretly procured fictitious bids to be made upon the lots previously sold, and that he was deceived and misled thereby."

The ground, upon which by-bidding at an auction is held to avoid the sale, is that it is a fraud upon the purchaser. Strictly speaking, in all cases where fraud is alleged as a cause of action, or as a defence, as for instance in an action of deceit, the burden of proof is upon the party alleging it, to prove the fraud and that he was influenced or damaged by it. But if the fraud proved is practised for the purpose of misleading, and such is its natural effect, the presumption is that it does mislead, and the party may rest upon this presumption as sustaining such burden of proof, in the absence of evidence to rebut it. *Holbrook* v. *Burt*, 22 Pick. 546. *Collins* v. *Denison*, 12 Met. 549. *Watson* v. *Earl Charlemont*, 12 Q. B. 856.

In cases where secret by-bidding is practised at an auction, the presumption that real bidders upon the same property are influenced and misled by it is very strong, if not conclusive. The purchaser's bid is based upon the assumption that the preceding bids are real and would not have been made if no fictitious bids had preceded it. The fraud of the seller is directly and inseparably connected with the contract of the purchaser, being, in its nature, an inducement to that contract. Ordinarily such by-bidding not only naturally but necessarily influences and misleads the real bidder.

And where, as in the case at bar, a large tract of land is cut up into lots, and sales of the lots are made at the same time, as parts of the same transaction, we think the same rule applies The designed and natural effect of by-bidding upon the lots first sold is to mislead the judgment of the buyers as to the value of the whole tract, and to induce them to bid more than they would

upon a fair sale. There is a presumption that the last bidders are influenced and injured by the previous fictitious bids, and they may avoid the sale without further proof that they are influenced and injured, if there is no evidence tending to control or rebut such presumption.

But this presumption may be rebutted. If the by-bidding had no effect or influence upon the purchaser's bid, the latter cannot avoid his contract. As in other cases where deceit or fraud is used in a sale, the purchaser cannot avoid it if he was not induced or influenced by the fraud to enter into the contract.

The ruling of the learned judge who presided at the trial went further than this. He instructed the jury that any by-bidding on any of the lots avoided the sale, and that they were not to inquire whether the bids of Aspinwall were influenced by such by-bids or not. This required them to find a verdict for Aspinwall, if there was any by-bidding, even if the evidence satisfied them that his bid was in no way induced or influenced by the fraud. In this respect the instruction was erroneous. As the evidence is not reported we cannot see that this error was immaterial, and are therefore of opinion that there must be a new trial.

*Exceptions sustained.*