## BROWN v. CITY OF NEW YORK.

(Supreme Court, Special Term, New York County.   December 31, 1907.)

**1. MUNICIPAL CORPORATIONS—SALE OF LEASE—REJECTION OF BIDS.**

Where the terms of sale of a lease by a city authorized a rejection of any bid, a bid could not be rejected after its acceptance and the receipt by the city of money thereunder.

**2. SAME—EVIDENCE—SUFFICIENCY.**

Evidence in an action against a city to specifically perform a contract to lease land *held* to show no mistake in the description of the land, and that plaintiff purchased what the city intended to sell.

**3. SAME—APPRAISAL—NECESSITY.**

New York City may not defeat specific performance of a contract to lease land, because the sinking fund commissioners did not have the land reappraised after amending the resolution ordering the sale so as to eliminate a provision authorizing the city to cancel the lease at any time, since under Greater New York Charter, Laws 1901, p. 79, c. 466, § 205, authorizing the commissioners to lease property, after appraisal, etc., it was discretionary with them whether any appraisal should be had, and since a city may not repudiate a contract upon technical omissions to perform collateral acts not of the substance of the power exercised or jurisdictional in character.

**4. SAME—MISTAKE.**

A city may not defeat specific performance of a contract to lease land because its appraiser appraised the wrong tract, where there was no mutual mistake, and where it did not appear that the mistake affected the substance of the contract, that plaintiff took any fraudulent advantage of the mistake, or that the officers ordering the sale were influenced thereby.

**5. SAME.**

That plaintiff knew part of land a city contracted to lease to him was already under lease does not tend to show a mistake as to the land intended to be leased, but mere notice of a prior lien.

Action by one Brown against the city of New York for specific performance of a contract to lease land.   Judgment for plaintiff.

Baldwin & Blackmar (James L. Bennett and Frederick S. Fisher, of counsel), for plaintiff.

Francis K. Pendleton (Charles A. O'Neill, of counsel), for defendant.

LEVENTRITT, J.   On April 11, 1906, a communication from the Washington Heights Hospital was sent to the secretary to the commissioners of the sinking fund of the city of New York containing a proposal to lease from the defendant, for a term of years, certain property owned by it situated on the northerly side of 151st street, beginning 125 feet east of Amsterdam avenue, consisting of three lots and being 75 feet in width by 99 feet 11 inches in depth.   This proposal was referred to the official appraiser of the department of finance, who thereafter reported to the comptroller that he had appraised this property—describing it as above—and that he advised the sale at auction of a lease of the premises for 10 years, with a privilege of renewal for a like period, outlining the terms of the lease, and fixing an upset price of $500 a year.   He further suggested that the lease should contain a reservation to the city of the right of cancella-

tion on 30 days' notice should the property be required for public purposes, and also a clause giving the comptroller the right to reject any bid if deemed by him to be for the best interest of the city. This report was approved by the comptroller and presented to the commissioners of the sinking fund, who, acting thereon, passed a resolution that a lease of the premises described be sold pursuant to section 205 of the charter in accordance with the terms suggested. The Washington Heights Hospital objected to the 30-day cancellation clause, and upon the recommendation of its appraiser the commissioners of the sinking fund amended the former resolution by eliminating that clause. Notice of sale was duly published in the city record as required by the charter, the premises being described therein as follows:

"All that certain plot of ground situated on the northerly side of West One Hundred and Fifty-First street, distant one hundred and twenty-five (125) feet easterly from the northeasterly corner of West One Hundred and Fifty-First street and Amsterdam avenue; size of plot seventy-five (75) feet front and rear by ninety-nine (99) feet eleven (11) inches in depth on either side."

On May 16th a lease of the property described in the notice of sale was sold at public auction at the office of the comptroller, and, the plaintiff being the highest bidder, it was knocked down to him at a rental of $850 per annum. A memorandum of sale was prepared by the auctioneer and the plaintiff paid the first quarter's rent, required by the terms of sale, together with the auctioneer's fees, and was given a receipt for "one quarter's rent on account of sale for all that certain plot of ground, * * *" describing it as in the notice of sale. On the same day he was given another and more formal receipt:

"For house rent 151st street and Amsterdam avenue ¼ from May 16th to August 16th, 1906, as per sale this day. Resolution S. F., April 26th, 1906."

Thereafter the plaintiff received notice that the defendant would not execute the lease, and, in reply to a formal demand, the comptroller notified the plaintiff's attorneys that, acting on the advice of the corporation counsel, he had rejected the plaintiff's bid. That gave rise to this litigation, in which the plaintiff seeks specific performance, or, in the alternative, damages for the defendant's breach of its contract, predicating his right to that relief upon the facts stated.

Four defenses are urged: (1) That, pursuant to the right reserved by the terms of sale, the comptroller rejected the plaintiff's bid; (2) that it was intended to sell a lease of premises beginning 150 feet east of Amsterdam avenue and not 125 feet east, as described in the notice of sale, that the westerly 25 feet of the premises advertised were in the possession of a tenant of the defendant, and that upon discovering the error the plaintiff was notified of the defendant's inability to execute the lease and of its willingness to return the money paid on account; (3) that there was a mistake in the appraisal, that the property advertised was never appraised, but that the appraisal submitted to the sinking fund commissioners was of property 150 feet east of Amsterdam avenue; (4) that no appraisal was made of the premises after the original resolution of the commissioners was amended by eliminating the 30-day cancellation clause.

The first defense is without merit. After the plaintiff's bid had been accepted and payment thereunder received and acknowledged, the right of rejection ceased to exist. The comptroller's right to reject did not continue after the plaintiff had been accepted as the successful bidder.

The second defense is not sound in law, and, moreover, is not supported by the evidence. The only evidence of an intention to sell a lease of any other plot than the one described in the notice of sale is contained in statements, made by the appraiser and by an employé in the defendant's finance department, that it was intended to lease property 150 feet from Amsterdam avenue. The communication from the hospital, however, described the identical property leased, and every record of the defendant contains the same description. There is no evidence of an intention on the part of the sinking fund commissioners to lease any other property—and the appraiser himself testified in the course of his examination that the premises intended to be leased were 125 feet from Amsterdam avenue, but that he was misled by the map and appraised the wrong parcel. The conclusion is, therefore, irresistible that there was no error in description and that the plaintiff purchased what the defendant intended to, and did, sell.

The third and fourth defenses involve the validity of the sale; that is (1) that the sinking fund commissioners did not order a new appraisal after the amendment of the original resolution, and (2) that, according to the testimony of the appraiser, the premises advertised were never appraised. The defendant contends · that a reappraisal after striking out the cancellation clause was necessary to a valid sale. It invokes section 205 of the charter (Laws 1901, p. 79, c. 466), which reads:

"The said board shall, except as in this act otherwise specifically provided, have power to sell or lease for the highest marketable price or rental at public auction, or by sealed bids, and always after public advertisement for a period of at least fifteen days in the city record, and after appraisal under the direction of said board made within three months of the date of sale, any city property except parks, wharves and piers and land under water. * * *"

For two reasons this contention is untenable:

(1) It was discretionary with the commissioners whether any appraisal should be had, and their failure to order such an appraisal has no legal effect on the ultimate sale. In Muller v. Mayor, 63 N. Y. 353, 356, where language similar to that contained in the charter provision was considered, the court said:

"It was for the commissioners to determine when an appraisal was necessary to enable them intelligently and properly to exercise their discretion and perform their duties in selling or offering for sale, or in leasing city property."

(2) The objection is not to any irregularity or invalidity in the record proceedings leading up to the sale nor of any abuse of power by the sinking fund commissioners, but to the omission of a collateral act of which no record would appear and which was not necessary to the exercise of the power resting in the commissioners to authorize

a sale. The objection is purely technical, and is without foundation in statute.

Defenses by official boards resting upon their omission to do acts which they were empowered to do in order to perfect the authority they assume to exercise are not favored when invoked against innocent parties dealing with them in good faith. This principle, as was said in Van Dolsen v. Board of Education, 162 N. Y. 446, 452, 56 N. E. 990, "serves to protect the innocent against the active or constructive defeat of public officers, who, having the power in their own discretion to do the act lying at the foundation of their authority, omit it, and fail to disclose the omission, but contract as if there were none." Again, it has been held that courts are not disposed to countenance defenses based upon mere irregularities in the making of contracts by municipal corporations or noncompliance with preliminary requirements not going to the question of power. And that individuals dealing with municipal authorities "may, without incurring extra hazard, assume that acts of a general governing body within their general powers which are published, represented and held out as valid, with invitations to individuals to enter into engagements and expend money and labor on the faith of them, are in fact as represented." Moore v. Mayor, 73 N. Y. 238, 29 Am. Rep. 134. Contracts may not be repudiated upon allegations of technical omissions to perform collateral acts not of the substance of the power exercised or jurisdictional in their character. A contrary principle would invite and facilitate imposition.

The defense of mistake is unavailing. No mistake was made by the sinking fund commissioners under whose direction the lease was sold. The only mistake disclosed is that of the appraiser. It is not alleged that there was a mutual mistake; nor that a mistake entered into the substance of the contract; nor that the plaintiff took fraudulent advantage of the defendant's alleged mistake; nor even that the sinking fund commissioners were influenced by any mistake. If a mistake was committed, it was by the defendant's employés, and it cannot be invoked to defeat the rights of the plaintiff. Evidence was adduced that at the sale the plaintiff was notified that a portion of the premises was already under lease, but that pointed to no mistake or error in description; it was a mere notice of a prior lien. Upon the trial the plaintiff offered to accept the lease subject to that lien. I find that the sale pursuant to which the plaintiff acquired his right to a lease was lawful, conforming to all the provisions of law authorizing it.

Let there be specific performance, with costs, subject to the rights of the tenant in possession of the westerly twenty-five feet of the premises described. A decision combining the findings of fact and conclusions of law as approved should be submitted.