## CITY OF NEW YORK v. UNION NEWS CO.

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

1. AUCTIONS AND AUCTIONEERS ⊶7—BIDS—RIGHT TO REJECT BIDS—TIME TO EXERCISE REJECTION.

A right to reject any or all bids at an auction sale must be exercised before acceptance of any bid.

[Ed. Note.—For other cases, see Auctions and Auctioneers, Cent. Dig. §§ 20–24; Dec. Dig. ⊶7.]

2. AUCTIONS AND AUCTIONEERS ⊶6—AGENCY OF AUCTIONEER.

An auctioneer is the agent of the vendor, and his act in accepting the bid at an auction sale is the act of the vendor.

[Ed. Note.—For other cases, see Auctions and Auctioneers, Cent. Dig. §§ 16–19; Dec. Dig. ⊶6.]

3. MUNICIPAL CORPORATIONS ⊶719—CONTRACTS—ADVERTISING FOR CONTRACT WORK—STATUTORY PROVISIONS.

Greater New York Charter (Laws 1901, c. 466) §§ 419, 420, relating to advertising for contract work exceeding $1,000 and authorizing the rejection of bids, relate to sealed proposals, and not to leases by the dock department.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1425, 1529–1535; Dec. Dig. ⊶719.]

4. MUNICIPAL CORPORATIONS ⊶719—DOCKS—SALE OF PRIVILEGE—RESERVATION OF RIGHT TO REJECT BIDS—TIME TO EXERCISE.

Where an auction sale by the dock department of New York City of a privilege at a ferry terminal was subject to the right to reject any or all bids, the rejection must be exercised before acceptance of the bid, even if Greater New York Charter, §§ 419, 420, relating to advertising for contract work, is applicable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1425, 1529–1535; Dec. Dig. ⊶719.]

5. MUNICIPAL CORPORATIONS ⊶719—DOCKS—SALES OF PRIVILEGE—VALIDITY—EVIDENCE.

Evidence *held* to justify a finding that a bid at auction sale by the dock department of New York City of a privilege was unconditionally accepted, so that a contract for the privilege was created.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1425, 1529–1535; Dec. Dig. ⊶719.

6. MUNICIPAL CORPORATIONS ⊶719—DOCKS — PRIVILEGES — TEMPORARY LEASES.

Where a lease of a privilege of a ferry terminal in New York City was a temporary one, the commissioner of docks of the city must, on the expiration of the lease, let the privilege pursuant to auction sale on public advertisement or procure the consent of the commissioners of the sinking fund to make a lease without it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1425, 1529–1535; Dec. Dig. ⊶719.]

7. MUNICIPAL CORPORATIONS ⊶719—DOCKS—SALE OF PRIVILEGE—HOLDING OVER AFTER EXPIRATION OF TERM.

Where a lease of a privilege at a ferry terminal in the city of New York was a temporary permit subject to the pleasure of the commissioner of docks, the holding of the privilege was at will, and a holding over after the expiration of the maximum period fixed in the lease was not a holding over within the rule as to renewal by holding over.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1425, 1529–1535; Dec. Dig. ⊶719.]

Ingraham, P. J., and Scott, J., dissenting.

⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, New York County.

Action by the City of New York against the Union News Company. From a judgment of dismissal on the merits, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

E. Crosby Kindleberger, of New York City, for appellant.

Frank M. Patterson, of New York City, for respondent.

LAUGHLIN, J. This action was brought to recover rent for newsstand and other privileges at the Manhattan Terminal of the Staten Island Ferry for a period commencing May 1, 1913, on the theory that defendant, who was in possession under a lease of like privileges executed by the city on the 26th of April, 1912, for one year commencing May 1, 1912, at an annual rental of $23,000 payable quarterly in advance, held over and became, on plaintiff's election, liable as tenant for another year. It does not appear whether the former lease was a temporary permit executed by the dock commissioner pursuant to the provision of section 825 of the Charter, or one executed on a sale of the privileges, or with the approval of the sinking fund commissioners pursuant to the provisions of said section; but the city in its brief states that it was a temporary permit.

On the 18th of March, 1913, negotiations were opened by defendant by a proposal for a renewal of the lease on the same terms for the ensuing year. It is stipulated that this was followed by an offer by the city of a renewal for one year at an advance of 10 per cent. in the rent to be paid, which was declined by defendant. The privileges were then advertised for sale by the city through its department of docks, and it required an initial bid of $23,000, but none was received and the sale was declared off. It was then advertised for sale without an initial bid. The dock commissioner, who represented the city, in the advertisement for bids announced over his signature and official title that the privileges would be sold *at the time specified* therein to the highest bidder. The advertisement for proposals gave the name of Joseph P. Day as the auctioneer who was to conduct the sale for the commissioner, and, after reciting other conditions, the advertisement recited that the commissioner reserved the right to reject "any or all bids, if, in his judgment, he deems it for the best interests of the city of New York so to do." At the time specified Mr. Day offered the privileges at public auction, first reading the terms of sale as advertised. Defendant's bid of $15,550 was the highest, and it is undisputed that the privileges were sold to it at its bid, and that it thereupon paid the auctioneer's fees and paid the rent for the first quarter to the cashier of the department of docks, and received a formal receipt therefor.

The sale was on the 29th of April, 1913, and defendant's former lease expired at noon on May 1st. At 11:50 a. m. on May 1st the commissioner caused a letter to be delivered to defendant rejecting its bid and tendering back the money for the rent for the first quarter. Thereafter and on the same day defendant delivered to the cashier

of the department of docks an envelope containing the money and at the same time and place delivered to the commissioner a letter refusing to accept his rejection of its bid and claiming the right to possession by virtue of its bid which had been accepted, and also declining a proposition contained in his letter to permit it to remain in possession subject to his pleasure at the same rental as before. Defendant continued in possession, and at the commencement of each quarter tendered the rent according to its bid. The tenders were refused. After the commencement of the third quarter the city brought this action.

It appears that on April 30th the commissioner in a conversation with the attorney for defendant attempted orally to reject the bid, claiming that the right to reject had been reserved when the privileges were knocked down to defendant, and that the attorney for defendant stated that he would like to talk the matter over with his clients, and later notified the assistant secretary to the commissioner that he would hold the city to the bid.

The case was tried by consent by the court without a jury. There was a disputed question of fact with respect to whether, at the time defendant's bid was accepted by the auctioneer, it was announced that it was accepted subject to subsequent rejection by the commissioner. The assistant secretary of the commissioner testified that on the receipt of defendant's bid, no higher bid being offered, he consulted with the commissioner, who was in the adjoining room, and then authorized the auctioneer to accept the bid subject to the right of the commissioner to reject it, and that the auctioneer so announced, and that he then *authorized the cashier's office to receive the rent for the first quarter subject to the reservation.* The second deputy commissioner was present and gave corroborating testimony with respect to the announcement, as did a messenger in the department.

On the part of defendant, one of its superintendents testified that the bid was accepted unconditionally, and its general manager, its secretary, and one Hickey who had a news stand outside the Ferry Terminal, and two other superintendents of defendant, testified that they were present and did not hear the announcement of any condition at the time the bid was accepted. The auctioneer testified in answer to an inquiry made by the court, neither party having interrogated him on the subject, in substance among other things, that he did not recall that the secretary to the commissioner requested him to make any announcement with respect to the acceptance of the defendant's bid by him being subject to rejection, or that he did make any such announcement. It further appears that in advance of the trial most of the material facts were stipulated, and the stipulation is to the effect that defendant's bid was accepted by the auctioneer, and it contains no suggestion or reservation with respect to any condition. It is urged that this is significant as tending to show that such claim was an afterthought and was made in an endeavor to avoid the effect of certain decisions.

[1, 2] The general rule is, and it is, I think, particularly applicable to an auction sale, that a right reserved to reject any or all bids is to be exercised before the acceptance of any bid, and that the auctioneer is the agent of the vendor, and his act in accepting a bid is the act of

the vendor. Brown v. City of N. Y., 57 Misc. Rep. 433, 108 N. Y. Supp. 555, affirmed on opinion below 128 App. Div. 925, 112 N. Y. Supp. 1123; Lynch v. Mayor, 2 App. Div. 213, 37 N. Y. Supp. 798; Kerr v. Philadelphia, 8 Phila. (Pa.) 292, discussed in defendant's brief, page 16; Payne v. Cave, 3 Term Rep. 148; Blossom v. Realty Co., 3 Wall. 196, 18 L. Ed. 43; Curtis v. Aspinwall, 114 Mass. 187, 19 Am. Rep. 332; Park Com'rs v. Carmody, 139 Ill. App. 635.

[3, 4] Section 825 of the charter authorizes the commissioner to sell such privileges at public auction, but it contains no provision with respect to reserving the right to reject bids. It is claimed by the city that the sale was made not only pursuant to that section, but pursuant to sections 419 and 420 of the charter, which relate to advertising for contract work exceeding $1,000 and contain a provision authorizing the rejection of bids. Those provisions do not apply. They relate to sealed proposals and not to leases by the dock department. Moreover, if they did apply, the authorities cited would still be applicable.

[5] On the disputed question of fact the court found in favor of defendant, and I think the finding is sustained by the preponderance of the evidence. On that theory the acceptance of the bid unconditionally constituted a contract for the lease, and defendant is liable under the contract, as evidenced by the advertisement and its bid, and not for holding over. It is therefore unnecessary to decide whether the rule with respect to holding over applicable to ordinary tenancies would otherwise apply and render defendant liable on that theory, which is, at least, doubtful, for no provision of law is cited authorizing the Commissioner to permit such a tenant to hold over under the terms of the former lease.

[6] If the lease was a temporary one, as stated by counsel for the city, it is clear that it expired on May 1, 1913, and that it was the duty of the commissioner to let the privilege pursuant to an auction sale on public advertisement, or to get the consent of the commissioners of the sinking fund to make a lease without that, of which there is no evidence.

[7] If, as claimed by the city, the former lease was a temporary permit, subject to the pleasure of the commissioner, it was at will, and, on holding over after the expiration of the maximum period of one year, the rule with respect to renewal by holding over might not obtain. See Brown v. City of N. Y., 78 App. Div. 361, 79 N. Y. Supp. 943, affirmed without opinion 176 N. Y. 571, 68 N. E. 1115.

It follows that the judgment should be affirmed, with costs.

McLAUGHLIN and CLARKE, JJ., concur.

INGRAHAM, P. J. (dissenting). On April 30, 1913, the defendant was in possession of certain premises, a part of the municipal ferry terminal at the Manhattan Terminal of the Staten Island Ferry, under an agreement in writing dated April 26, 1912, by which the plaintiff granted to the defendant "a permit, privilege, or license" to sell newspapers, books, and other articles for a period of one year from May 1, 1912, for which the defendant agreed to pay to the plaintiff $23,000 for the year.

On April 29, 1913, Joseph P. Day, auctioneer, sold at public auction to the highest bidder the privilege to sell newspapers, books, etc., at the Manhattan Terminal of the Staten Island Ferry for two years, by direction of the commissioner of docks of the city of New York. The sale was made under certain terms of sale which were read at the time of sale. By these terms of sale the successful bidder was required at the time of sale to pay the auctioneer's fee of $50, to enter into a written agreement to comply with the terms, conditions, and limitations of the permit issued to him by the commissioner of docks, and to pay to the department of docks 25 per cent. of the amount bid, to be held as security for carrying into effect the terms of sale, which 25 per cent. would be applied to the payment of the quarterly installment first accruing under said agreement when executed. The commissioner of docks expressly reserved the right to "reject any and all bids, if in his judgment he deems it for the best interests of the city of New York to do so." At this sale the defendant bid $15,500, which was the highest bid. When the auctioneer accepted that bid as the highest bid, the defendant paid the $50 auctioneer's fee and deposited one-quarter of the amount of the bid with the cashier of the department of docks.

There was a dispute at the trial as to whether the auctioneer announced that he accepted the bid subject to the right of the commissioner to reject it, but on this question the court found in favor of the defendant. On April 30th the commissioner informed the defendant that the bid of $15,500 was rejected, and before 12 o'clock of May 1st the commissioner of docks notified the defendant in writing that its bid at the sale of April 29th was rejected, but that defendant might hold over and remain in possession of the privileges at the same rent as the preceding year, and the deposit made by the defendant was returned. The defendant insisted, however, that it was entitled to the license for the amount of its bid, and that the commissioner could not reject the bid, and it was on this question that the right of the plaintiff to a judgment depended. By the terms of sale the highest bidder was at the time of the sale to enter into a written agreement with the city and to deposit 25 per cent. of his bid as security for carrying into effect the term of sale, which was to be forfeited to the city of New York as liquidated damages if the successful bidder neglected or refused to execute the agreement within four days after being notified that the agreement was ready for execution, and the commissioner reserved the right to reject any or all bids. The commissioner was not present at the sale. The auctioneer, acting under his direction, offered the privilege for sale, and was authorized to receive bids therefor. "The successful bidder" was required to make a deposit, not as a payment for the rent, but as security that he would execute the agreement.

It could not have been the full intendment of these terms of sale that the commissioner was required to exercise this right to reject the bid before the auctioneer announced who was the successful bidder; but after that was ascertained the commissioner had a reasonable time within which to determine whether it was for the best interest of the city to accept or reject the bid. To protect the city he reserved the right to reject any and all bids at the auction sale. If he could only exercise

this right before the auctioneer had determined whose bid was the highest one, the right reserved was no protection at all to the city, for it would leave the city at the mercy of the auctioneer, and there was no provision which bound the city to execute an agreement to the lowest bidder. It was the commissioner who was to exercise this right, not the auctioneer, and it was the right of the commissioner to reject any and all bids, and that right, I think, continued for a reasonable time, until he could determine whether the interest of the city required that the bid should be rejected. He reserved this right of rejection to protect the city. It could only be exercised after the auctioneer had announced who was the highest bidder and the amount of the bid. This the auctioneer did, when it was settled that the defendant's bid of $15,-500 was the highest bid, and then it was for the commissioner to act, and, under the circumstances, I think he acted within a reasonable time, and the defendant, therefore, acquired the right to an agreement in accordance with its bid. The defendant then, continuing in possession of the privileges under the letter of the commissioner, was, I think, obligated to pay the compensation reserved by the former agreement, and therefore the plaintiff was entitled to judgment.

The case of Brown v. City of New York, 57 Misc. Rep. 433, 108 N. Y. Supp. 555, is not in point. In that case it was the comptroller who had reserved the right to reject the bid after the property had been knocked down to the plaintiff, and who accepted from the plaintiff one quarter's rent of the premises. This was, of course, an acceptance of the bid. In this case the defendant deposited with the department a sum of money as security for his executing an agreement in accordance with his bid as accepted. The receipt of that deposit was not, as I view it, an acceptance of the bid.

The judgment should, I think, be reversed, and judgment directed for the plaintiff.

SCOTT, J., concurs.