[5 NE3d 976, 982 NYS2d 813]

WILLIAM J. JENACK ESTATE APPRAISERS AND AUCTIONEERS, INC.,
Appellant, v ALBERT RABIZADEH, Respondent.

Argued November 13, 2013; decided December 17, 2013

**POINTS OF COUNSEL**

*Ostrer & Hoovler, P.C.*, Chester (*Benjamin Ostrer* and *Cynthia Dolan* of counsel), for appellant. I. The Second Department departed from this Court's holding in *Hicks v Whitmore* (12 Wend 548 [1834]), in requiring a literal application of General Obligations Law § 5-701 (a) (6) by requiring that only the consignor's name would satisfy the statute. (*Mentz v Newwitter*, 122 NY 491; *Matter of Peaslee*, 13 NY3d 75.) II. The entry of the agent's name upon the auction clerk's records was erroneously held to be insufficient to satisfy the statute of frauds or General Obligations Law § 5-701 (a) (6). (*Hicks v Whitmore*, 12 Wend 548; *Cristallina v Christie, Manson & Woods Intl.*, 117 AD2d 284.) III. In confining its reading of General Obligations Law § 5-701 solely to the primary and explicit sense of the words

utilized by the legislature, the Appellate Division failed to allow resort to multiple documents and thereby approved a misuse of the statute of frauds. (*Crabtree v Elizabeth Arden Sales Corp.*, 305 NY 48.) IV. The statute of frauds was improperly invoked. (*Thompson v Simpson*, 128 NY 270; *Morris Cohon & Co. v Russell*, 23 NY2d 569.) V. As the legally responsible party, the auctioneer satisfied the requirement of General Obligations Law § 5-701 with respect to the sale of lot No. 193 by including itself on the clerking sheets. (*Meyer v Redmond*, 205 NY 478; *Highland Capital Mgt. LP v Schneider*, 460 F3d 308; *Tallman v Franklin*, 14 NY 584; *Dulman v Fein & Co.*, 66 AD2d 809; *Marks v Cowdin*, 226 NY 138.)

*Michael S. Winokur*, Flushing, for respondent. I. The Appellate Division correctly reversed the lower court and correctly determined that the evidence presented by plaintiff on the motion to dismiss failed to show compliance with the statute of frauds. (*Crabtree v Elizabeth Arden Sales Corp.*, 305 NY 48.) II. The contract alleged in the complaint is unenforceable because the memorandum of sale entered in the sale book did not contain the name of the person on whose behalf the sale was made as required by General Obligations Law § 5-701 (a) (6). (*Hicks v Whitmore*, 12 Wend 548; *Peltier v Collins*, 3 Wend 459; *People v Finnegan*, 85 NY2d 53; *Mentz v Newwitter*, 122 NY 491; *Ward v Hasbrouck*, 7 Bedell 407; *Price v Durin*, 56 Barb 647; *Foxley v Sotheby's Inc.*, 893 F Supp 1224; *Hessel v Christie's Inc.*, 399 F Supp 2d 506; *Hagedorn v Lang*, 34 App Div 117; *Crabtree v Elizabeth Arden Sales Corp.*, 305 NY 48.) III. The auctioneer in the within case was not the person on whose account the item was put up for sale. (*Cristallina v Christie, Manson & Woods Intl.*, 117 AD2d 284; *Mickle v Christie's, Inc.*, 207 F Supp 2d 237; *Meyer v Redmond*, 205 NY 478; *Dulman v Fein & Co.*, 66 AD2d 809; *Tallman v Franklin*, 14 NY 584.) IV. The decision of the Appellate Division which reversed the lower court does not interfere with the practice of auction houses of not publicizing the names of sellers. (*Hicks v Whitmore*, 12 Wend 548.)

*Cahill Partners LLP*, New York City (*John R. Cahill* and *Ronald W. Adelman* of counsel), for Sotheby's, Inc. and another, amici curiae. I. Because there is a signed agreement, General Obligations Law § 5-701 (a) (6) is inapplicable. II. The auction sale in this case would have been enforceable even in the absence of a writing signed by defendant. (*Hessel v Christie's Inc.*, 399 F Supp 2d 506; *Callimanopulos v Christie's Inc.*, 621 F

Supp 2d 127; *Burling v Brinn,* 116 Misc 130; *Brown v Farmers' Loan & Trust Co.,* 117 NY 266; *Morris Cohon & Co. v Russell,* 23 NY2d 569; *Vom Lehn v Astor Art Galleries,* 86 Misc 2d 1; *Lindt v Henshel,* 25 NY2d 357; *Finnish Fur Sales Co., Ltd. v Juliette Shulof Furs, Inc.,* 770 F Supp 139; *Matter of Premier Container Corp. [Leinwand],* 95 Misc 2d 859; *Hicks v Whitmore,* 12 Wend 548.)

## OPINION OF THE COURT

RIVERA, J.

William J. Jenack Estate Appraisers and Auctioneers, Inc. (Jenack) appeals from an order of the Appellate Division granting defendant Albert Rabizadeh (Rabizadeh) summary judgment, and dismissing the complaint in its entirety. We reverse because the Appellate Division erred in concluding that Jenack failed to comply with the statutory requirement of a writing in support of its breach of contract claim.

Jenack sells fine art and antiques at public auctions. The underlying dispute arises from Jenack's claim for damages resulting from Rabizadeh's failure to pay for an item offered at a Jenack public auction. The central issue in contention between the parties is whether the sale of the auction item to Rabizadeh is memorialized in a writing that satisfies the statute of frauds.

As is common practice in public auction houses, Jenack permits bidding online and by telephone, or "absentee bidding," in addition to traditional in-person bidding, for items numbered and described on its website and in its published auction catalogue. At all times relevant to this appeal, Jenack's website set forth information about the auction process, as well as terms of sales for absentee bidders. The website stated, under the subsection titled "Bid Forms," that "[i]f you are unable to attend the auction in person, and wish to place absentee bids, we will be happy to bid on your behalf, according to the Terms & Conditions of sale." It further stated that "[y]our credit card guarantees the good will of your bidding!" It informed any and all prospective bidders of payment obligation by stating "if your bid is successful you are legally responsible to make payment according to the terms set forth here."

To facilitate absentee bidding, and in order for Jenack to serve on behalf of an absentee customer, Jenack required the prospective bidder to submit in advance an "Absentee Bid Form" posted on the website. At the top of the form, Jenack

notified bidders that payment was due within five days of a successful bid. Directly above the signature line, the form included a preprinted notification that "[b]ids will not be executed without signature. Signature denotes that you agree to our terms."

Several days prior to a September 21, 2008 auction, Rabizadeh submitted a signed, absentee bidder form wherein he provided, as required by Jenack, his name, email address, telephone numbers, fax number, address, credit card number, and a list of items that Rabizadeh intended to bid on by telephone. Rabizadeh's list included the item at issue in this case, designated by Jenack as "Item 193," and described in the online and printed catalogue as a "Fine Russian silver/enamel covered box with gilt interior, signed I.P. Khlebnikov, 19th Century Height 1 1/2"; top 1/2 x 3 5/8 (Estimate $4000-$6000)." Upon receipt of this form, Jenack assigned bidder number 305 to Rabizadeh, and included this number on the top of the form.

At the September auction, Rabizadeh submitted a $400,000 bid on item 193, and successfully outbid a competing bidder. At the close of the bidding for this item, the chief clerk recorded the winning bid on Jenack's "clerking sheet." This clerking sheet sets forth in a preprinted tabulated column format, a running list of the items presented at the public auction, with a separate line for each item that includes the item's lot number, catalogue description, and the number assigned by Jenack to the consignor. At the top of the clerking sheet Jenack's name and title are set forth as "William J. Jenack Appraisers/ Auctioneers." On the line for item 193, the chief clerk filled in Rabizadeh's previously assigned bidding number to reflect him as the buyer, and the amount of his winning bid, $400,000.

Shortly after the auction, Jenack, who was in possession of item 193, sent Rabizadeh an invoice for $497,398, which reflected the bidding price, the 15% "buyer's premium" and applicable taxes. When Rabizadeh failed to pay, Jenack commenced this action for breach of contract, seeking damages, including the bid price and buyer's premium.

Rabizadeh moved for summary judgment claiming, as relevant here, that he was not liable for any monies to Jenack related to the auction because there was no writing memorializing any contract between Jenack and Rabizadeh, as required by the statute of frauds. Jenack responded by cross-moving for summary judgment, asserting that the clerking sheet and related

bidding documents complied with General Obligations Law § 5-701 (a) (6). Supreme Court denied Rabizadeh's motion and granted Jenack summary judgment on liability. After a non-jury trial on the issue of damages, Supreme Court entered judgment in favor of Jenack for the principal sum of $402,398.

Rabizadeh appealed. The Appellate Division, Second Department, reversed, concluding that Rabizadeh demonstrated prima facie that Jenack failed to comply with General Obligations Law § 5-701 (a) (6) because the clerking sheet did not include "the name of the person on whose account the sale was made," as required by the statute, and Jenack failed to raise a triable issue as to this matter (99 AD3d 270, 278 [2012]). This Court granted Jenack leave to appeal (20 NY3d 856 [2013]).

On appeal, Jenack contends that there was a bid agreement between the parties, pursuant to that agreement Rabizadeh submitted the winning bid at the September auction and that the documents related to Rabizadeh's $400,000 bid satisfy the statute of frauds. Jenack and Rabizadeh dispute whether the clerking sheet constitutes the writing required by General Obligations Law § 5-701 (a) (6), and whether any other document commemorates an agreement between them to purchase item 193.

This appeal comes to us in the posture of a summary judgment motion; thus we must consider whether Rabizadeh has met his burden to establish "a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *see also* CPLR 3212 [b]). This burden is a heavy one and on a motion for summary judgment, "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [citation and internal quotation marks omitted]). Where the moving party fails to meet this burden, summary judgment cannot be granted, and the non-moving party bears no burden to otherwise persuade the court against summary judgment (*id.*). Indeed, the moving party's failure to make a prima facie showing of entitlement to summary judgment requires a denial of the motion, regardless of the sufficiency of the opposing papers (*id.*).

To successfully establish his entitlement to summary judgment based on his claim that there is no writing reflecting the sale agreement for item 193, Rabizadeh must show that the record is bereft of documentation establishing such agreement, as

provided for under the law. Based on the record in this case, we conclude that Rabizadeh has not met his burden because there exists sufficient documentation of a statutorily adequate writing.

The statute of frauds is designed to protect the parties and preserve the integrity of contractual agreements. It is meant "to guard against the peril of perjury; to prevent the enforcement of unfounded fraudulent claims" (*Morris Cohon & Co. v Russell*, 23 NY2d 569, 574 [1969]). The statute "decrease[s] uncertainties, litigation, and opportunities for fraud and perjury," and primarily "discourage[s] false claims" (73 Am Jur 2d, Statute of Frauds § 403). "In short, the purpose of the Statute of Frauds is simply to prevent a party from being held responsible, by oral, and perhaps false, testimony, for a contract that the party claims never to have made" (*id.*).

Only certain types of agreements must comply with the statue of frauds. In general, a contract for the sale of goods at a price of $500 or more must comply with the signed writing requirement of UCC 2-201 (1). As relevant to this case, the General Obligations Law sets forth a special provision for the auctioning of such goods:

> "§ 5-701. Agreements required to be in writing
>
> "a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent . . .
>
> "6. Notwithstanding section 2-201 of the uniform commercial code, if the goods be sold at public auction, and the auctioneer at the time of the sale, enters in a sale book, a memorandum specifying the nature and price of the property sold, the terms of the sale, the name of the purchaser, and the name of the person on whose account the sale was made, such memorandum is equivalent in effect to a note of the contract or sale, subscribed by the party to be charged therewith."

Thus, in the case of a public auction, a bid may satisfy the statute of frauds where there exists an appropriate writing "signed by the party against whom enforcement is sought" (*see* UCC 2-201 [1]), or a memorandum in satisfaction of General Obligations Law § 5-701 (a) (6). Here, the dispute is centered on whether there is compliance with the latter.

It is well established that the statutorily required writing need not be contained in one single document, but rather may be furnished by "piecing together other, related writings" (*Henry L. Fox Co. v Kaufman Org.*, 74 NY2d 136, 140 [1989], citing *Crabtree v Elizabeth Arden Sales Corp.*, 305 NY 48 [1953]). Therefore, in determining whether there is compliance with General Obligations Law § 5-701 (a) (6), a court may look to documents relevant to the bidding and the auction.

The Appellate Division properly concluded that the clerking sheet, on its face and in isolation, does not satisfy the requirements of General Obligations Law § 5-701 (a) (6), because this provision requires the disclosure of the name of the buyer and the name of "the person on whose account the sale was made." We are unpersuaded by Jenack's arguments that this requirement can be satisfied by Jenack's insertion of numbers in place of those names.

We construe the terms of a statute that are clear and unambiguous, "so as to give effect to the plain meaning of the words used" (*Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y.*, 86 NY2d 198, 204 [1995] [internal quotation marks and citation omitted]; *accord* McKinney's Cons Laws of NY, Book 1, Statutes § 94, Comment at 194 [1971 ed]). The General Obligations Law states clearly that the memorandum must include names. It makes no provision for an alternative to a name, including some other mode of identification designed by an auction house to facilitate the auction process, such as, in this case, numeric identifiers. To allow for numbers, rather than names, would also undermine the purpose of the statute by increasing the possibility of fraud. Thus, the numbers assigned by Jenack to represent the buyer and seller/consignor on the clerking sheet do not satisfy General Obligations Law § 5-701 (a) (6).

Our analysis does not end with our conclusion that the clerking sheet in this case by itself fails to satisfy the requirements of the General Obligations Law because we must consider whether there are "related writings" that supply the required names, and which may be read, along with the clerking sheet, to provide the information necessary to constitute a memorandum in accordance with General Obligations Law § 5-701 (a) (6). We agree with the Appellate Division that the absentee bidder form, along with the clerking sheet, provide the necessary information to establish the name of Rabizadeh as the buyer. This conclusion is inescapable given that each of the documents

contained information pertaining to the terms of the sale as required by the statute. Both contain the item number, the bidder number, the auctioneer, and a detailed description of the item.

In addition to the buyer's name, the General Obligations Law requires disclosure of "the name of the person on whose account the sale was made." Jenack urges a reading of the statute that would not require disclosure of the seller's identity, and that would permit it to continue to honor a seller's request to remain anonymous throughout the consignment and bidding process. Jenack and amici argue that the auction business is important to New York State and that it is a time honored and necessary custom and practice of auction houses to maintain the confidentiality of the seller. It is their contention that a requirement that the seller's identity be divulged would undermine the industry. However, the General Obligations Law does not reference the "seller," making it clear that the seller's name need not be provided in order to satisfy the requirement of "the name of the person on whose account the sale was made."[1]

More than a century and a half ago, the New York Supreme Court of Judicature, then the highest common-law court in the state, held "the legislature intended it should not be necessary to insert the name of the real owner, but that it should be sufficient to insert the name of any person having legal authority to sell" (*Hicks v Whitmore*, 12 Wend 548, 553 [1834]; *see also* 12 Wend at 548 ["(t)he entry in the sale book of the name of an agent, factor, consignee, or of any person having legal authority to sell, is a compliance with the requirement of the statute that 'the name of the person on whose account the sale is made' shall be entered"]). It is well settled that an auctioneer serves as a consignor's agent (*City of New York v Union News Co.*, 169 App Div 278, 281 [1st Dept 1915], *affd* 222 NY 263 [1918]; *see also Cristallina v Christie, Manson & Woods Intl.*, 117 AD2d 284, 292 [1st Dept 1986]; *Mentz v Newwitter*, 122 NY 491, 494 [1890]; 10 Williston on Contracts § 29:40 [4th ed]). Obviously, requiring the name of an agent in cases where the seller wishes to remain anonymous in no way undermines the industry practice, because the seller need not be divulged without the seller's consent.

---

1. Of course, if Jenack had other written documentation of this transaction that provided the seller's name, that certainly would satisfy the statute, but there is no such documentation in the record.

Here, the clerking sheet lists Jenack as the auctioneer, and as such it served as the agent of the seller. The clerking sheet, therefore, provides "the name of the person on whose account the sale was made" and satisfies General Obligations Law § 5-701 (a) (6).[2] Nothing in the record suggests that Jenack served as anything other than the seller's agent. Thus, Jenack established an enforceable agreement and Supreme Court properly granted summary judgment on liability.

It bears repeating in such a case as this that

> " 'The Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made' " (*Morris Cohon & Co. v Russell*, 23 NY2d 569, 574 [1969], citing 4 Williston on Contracts § 567A at 19-20 [3d ed]).

Using the statute of frauds as a "means of evading" a "just obligation" is precisely what Rabizadeh attempts to do here, but the law and the facts foreclose him from doing so. Rabizadeh took affirmative steps to participate in Jenack's auction, including executing an absentee bidder form with the required personal information. He then successfully won the bidding for item 193, closing out other interested bidders, with his $400,000 bid. He cannot seek to avoid the consequences of his actions by ignoring the existence of a documentary trail leading to him.

Accordingly, the order of the Appellate Division should be reversed, with costs, and judgment of the Supreme Court reinstated.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and ABDUS-SALAAM concur.

Order reversed, with costs, and judgment of Supreme Court, Orange County, reinstated.

---

2. The Appellate Division refused to consider this argument because it concluded that Jenack failed to raise whether inclusion of Jenack's name or the name of an agent of the consignor on the clerking sheets satisfied section 5-701 (a) (6). However, the argument was not wholly unapparent from Jenack's assertions before Supreme Court. In opposition to Rabizadeh's summary judgment motion and in support of its cross motion for summary judgment, Jenack relied on its complaint and the clerking sheets to establish that item 193 was in Jenack's possession as agent for the consignor, and that it served on behalf of the seller. Jenack's cross motion for summary judgment also asserted that the clerking sheets satisfied the statute, citing *Hicks*.