CHARLES A. BROWN and JOHN FLEMING, Appellants, *v.* THE CITY OF NEW YORK and McDOUGALL HAWKES, Commissioner of Docks of The City of New York, Respondents.

*Permit to occupy a slip and construct a dumping board thereon — when void under section 845 of the New York charter — as a license it is revocable at pleasure.*

December 31, 1901, the board of docks of the city of New York granted the following permit, to continue during the pleasure of the board: "Brown & Fleming, to use and occupy the inner 200 feet of the south side of Old Slip Pier East, East River, and to construct a dumping board thereon, compensation to be charged therefor at the rate of $1,000 per annum, payable quarterly in advance to the treasurer." The whole of the pier mentioned in the permit, so far as appeared, was owned by the city of New York, and the north side thereof had been used for upwards of ten years for the loading and discharge of sailing vessels regularly employed in foreign commerce and having a draught of more than eighteen feet of water.

*Held,* that the permit was void under section 845 of the Greater New York charter (Laws of 1897, chap. 378), which provides: "It shall not be lawful to permit the use as a dumping ground of any wharf, pier or slip or bulkhead adjacent thereto in the navigable waters of the East river, in The City of New York, which has heretofore been used for the loading and discharging of sailing vessels regularly employed in foreign commerce and having a draught of more than eighteen feet of water; "

That, if such permit should be construed as a license and not as a grant, it was revocable at pleasure.

PATTERSON, J., dissented.

APPEAL by the plaintiffs, Charles A. Brown and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 18th day of November, 1902, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint upon the merits.

On the 31st day of December, 1901, the minutes of the board of docks of the city of New York showed the following action : " The following permits were granted, to continue during the pleasure of the Board, the work to be done under the supervision of the Engineer in Chief :

" Brown & Fleming, to use and occupy the inner 200 feet of the south side of Old Slip Pier East, East River, and to construct a dumping board thereon ; compensation to be charged therefor at the

rate of $1,000 per annum, payable quarterly in advance to the Treasurer."

The adoption of this permit was on the same day duly communicated to the plaintiffs by the secretary of the board.

The plaintiffs comprise the firm of Brown & Fleming referred to in said permit. On the 17th day of January, 1902, they paid $250, pursuant to said permit, the charges for the first quarter thereunder. Prior to the 23d day of January, 1902, they had constructed a dumping board on the pier pursuant to the permit, at a cost of $6,000. On the 24th day of January, 1902, the commissioner of docks " forbade and prevented the plaintiffs from using and occupying " the pier in any manner after the expiration of the first quarter; and on the 23d day of April, 1902, he rescinded and annulled the permit by an order or notice in writing, which was on the same day duly served on the plaintiffs. This formal action rescinding and annulling the permit contains a preamble reciting the granting of the permit, that part of section 845 of the Greater New York charter (Laws of 1897, chap. 378, as amd. by Laws of 1901, chap. 466) making it unlawful to permit the use as a dumping ground of certain wharves, piers or slips or bulkheads adjacent thereto, that this pier had been " in common and continuous use by sailing vessels engaged in foreign commerce and having a draught of more than eighteen feet of water," and provided that the rescission should take effect immediately, and directed the plaintiffs to remove any and all structures erected by them under the permit within fifteen days after the service of a copy thereof ; and further provided that, in the event of their failure so to do, the chief engineer of that department was directed to remove the same at their cost and expense. It also contained a request that the commissioners of the sinking fund approve the action and refund the money paid by the plaintiffs for the quarter's use of the pier.

According to the allegations of the complaint, which are admitted, the plaintiffs did not go into possession or use the pier under said permit in any manner except by constructing the dumping board thereon, and they paid nothing under the permit except for the first quarter. This action was commenced on the 5th day of May, 1902, for the purpose of having it adjudged that said permit constituted a valid lease for one year " or for such other time as will permit these

plaintiffs to have the reasonable use of said pier to enable them to reimburse themselves for the outlay and expense of constructing the said dumping board," and to enjoin the defendants from interfering with the maintenence and use by the plaintiffs of the dumping board and that part of the pier covered by the permit, and for "such other and further relief as to the court may seem just and proper," together with costs.

The trial court found that this pier was in the navigable waters of the East river; that from the 1st day of January, 1892, to the date of the decision, November 8, 1902, it had been "used for the loading and discharging of sailing vessels regularly employed in foreign commerce, and having a draught of more than eighteen feet of water," and that the permit was void on the ground that it was issued in violation of section 845 of the Greater New York charter.

Section 845 of the Greater New York charter (Laws of 1897, chap. 378) provides as follows: " It shall not be lawful to permit the use as a dumping ground of any wharf, pier or slip or bulkhead adjacent thereto in the navigable waters of the East river in The City of New York which has heretofore been used for the loading and discharging of sailing vessels regularly employed in foreign commerce and having a draught of more than eighteen feet of water."

*L. Laflin Kellogg*, for the appellants.

*Theodore Connoly*, for the respondents.

LAUGHLIN, J. :

There are three grounds upon which the judgment should be affirmed.

*First.* Considering the pier as a whole, the evidence fairly justifies the finding of the trial court that for upwards of ten years it had been used for the loading and discharging of sailing vessels regularly employed in foreign commerce and having a draught of more than eighteen feet of water. Such use of the pier, however, was principally upon that part of it variously referred to as the northerly or easterly half. The use of the part referred to as the northerly or easterly half by vessels of this kind and draught would not be sufficient alone to sustain the decision on the theory that the permit was

issued in violation of section 845 of the charter. It is, however, claimed on the part of the appellants that the northerly or easterly half of the pier was, during the times in question, owned by an individual; and upon that assumption their counsel argues that the granting of the permit was not prohibited by the section of the charter to which reference has been made. If that were so, it does not necessarily follow that the permit might be lawfully issued; for this entire pier is, in a limited sense, a public highway, and it seems that the owner of neither half would be authorized to so inclose or obstruct it as to prevent passage over the same by persons lawfully having business upon the other half (*People* v. *B. & O. R. R. Co.,* 117 N. Y. 150), which decision appears to relate to the pier in question. But however this may be, the record does not present the question for review. It was neither alleged in the complaint nor proven upon the trial that the city did not own the entire pier. When the defendants rested, but before the evidence was declared closed, their counsel moved for judgment. The court manifested an intention to grant the motion, and thereupon counsel for the plaintiffs stated that he wished to show, before the case was closed, that the city had no title to the north side of the pier within a year; whereupon the the court said, "That is not material;" and defendants' counsel asserted that the city had always owned the south side of the pier. Counsel for the appellants thereupon said, "I offer to prove that until within the last six months the city had no title to the north side of the pier." This was objected to by counsel for the respondents on the ground that it was incompetent, irrelevant and immaterial; whereupon the court dismissed the complaint upon the merits. No exception was taken by counsel for the appellants; consequently, no error in this regard is presented for our review. It follows, therefore, that on these facts, under section 845 of the Greater New York charter, the use of this pier for a dumping board was prohibited. Consequently, the permit was void and was properly rescinded.

*Second.* Moreover, if the permit be construed as a license and not as a grant, it is clear that it was revokable at pleasure. (*Murdock* v. *Prospect Park & Coney Island R. R. Co.,* 73 N. Y. 579; *Wiseman* v. *Lucksinger,* 84 id. 31; *Cahoon* v. *Bayaud,* 123 id. 298; *Babcock* v. *Utter,* 1 Abb. Ct. App. Dec. 27.)

*Third.* Assuming, without deciding, that the permit constituted

a lease, it manifestly was only a lease at will, which was terminable by the notice; and the rights of the appellants thereunder would terminate at the expiration of thirty days from the giving of the notice, which was prior to the trial of this action. The action was commenced on the 5th day of May, 1902. It was tried on the 28th day of October, the same year, and judgment was entered on the decision on the eighth day of November thereafter. If the permit constituted a lease, being subject to the pleasure of the board, it could not be maintained that there was a lease for any definite period, although the rent was fixed by the year and payable quarterly. Being subject to the pleasure of the board would necessarily make it a tenancy, if a tenancy at all, at will or by sufferance; and the most that appellants would be entitled to would be thirty days' notice. (Real Prop. Law [Laws of 1896, chap. 547], § 198.) If it were a tenancy, the notice, although defective in attempting to terminate the tenancy in less than thirty days, became operative after the lapse of thirty days. (*Burns* v. *Bryant*, 31 N. Y. 453.) Accordingly, if it were a lease, all of the rights of the appellants terminated on the 23d day of May, 1902, which was thirty days after the notice was given and which was before the trial of the action. The giving of this notice, as has been seen, was pleaded in the complaint and in the answer, and proved upon the trial. The action is in equity. No damages are demanded, and no question with reference to the right of the plaintiffs to damages is involved in the issues or adjudicated by the decision. The only relief prayed for is of an equitable nature. Consequently, the appellant being entitled to no equitable relief at the time of the trial, the complaint was properly dismissed.

It follows, therefore, that the judgment should be affirmed, with costs.

O'BRIEN, J., concurred.

VAN BRUNT, P. J., and McLAUGHLIN, J.:

We do not think the permit had any of the attributes of a lease. Otherwise, we concur.

PATTERSON, J., dissented.

Judgment affirmed, with costs.