MOSES H. HARRIS, Respondent, *v.* THE BEDELL COMPANY and Another, Appellants.

First Department, February 3, 1928.

Landlord and tenant — leases — renewal — defendant, lessee of one building, rented adjoining building by taking assignment of existing lease which expired in April, 1927 — defendant leased large portion of last building to plaintiff by lease expiring in April, 1927 — said lease to plaintiff provided that if six months before expiration defendant should have " acquired " premises and filed plans for erection of new building, then option to renew would not operate — defendant acquired long term lease on building leased to plaintiff — proper plans were filed and plaintiff notified — lease construed not to give plaintiff right to renew.

The question involved in this action is whether plaintiff has an exercisable option to renew a sublease on a part of a building leased by the defendant. The defendant leased a building and later in view of its expanding business rented the building in question which adjoins the first building, by an assignment of a lease then held by a third person which expired in April, 1927. The assignment did not carry the right to renewal. The plaintiff took a sublease of a large portion of the building in question. The sublease provided that in case the defendant should procure a renewal of its present lease or a new lease the plaintiff would have the option to renew. But the sublease also provided that if at least six months before the expiration of the sublease the defendant should have " acquired " the premises and should actually have filed plans for the erection of a new building thereon, then the option should cease. The defendant subsequently acquired a long term lease on the property in question after clearing the property of existing leases. Plans for the erection of a new building were filed within the time specified and the plaintiff was notified that his option was at an end.

Reading the sublease as a whole it is evident that it was the intention of the parties that if the defendant was able to put itself in a position to build a new building then the option would cease.

The word " acquire," as used in the sublease, did not necessarily mean to " acquire in fee."

The fact that the municipal authorities required plans which contemplated the remodeling of an old building in connection with the erection of an adjoining new building to be classed as plans for alteration is of no force. The building occupied by the plaintiff was to be entirely demolished and a new structure erected and this and not a classification by the municipal authorities determines that defendant actually contemplated the erection of a new building.

APPEAL by the defendants from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 17th day of June, 1927.

*Clarence J. Shearn* of counsel [*Adolph Bloch* with him on the brief; *Shearn & Hare,* attorneys], for the appellants.

*Lyttleton Fox* of counsel [*Isidor Bregoff* with him on the brief; *O'Brien, Boardman, Fox & Early,* attorneys], for the respondent.

MARTIN, J.   The defendant, the Bedell Company, is a corporation engaged in dealing on a large scale in women's ready-to-wear apparel, having been located at New York city in that line for thirty years.   It conducts business in twelve different States.

The codefendant, the Ormond Realty Company, is a corporation utilized by the Bedell Company for handling its real property holdings.   Both companies are practically owned by Alfred M. Bedell, their president, who holds all except directors' qualifying shares.

The main place of business of the Bedell Company is its building at No. 19 West Thirty-fourth street, borough of Manhattan, city of New York.   When it first located there it leased, through the Ormond Realty Company, the first three floors of No. 19 West Thirty-fourth street, running through to Thirty-fifth street.   Two or three years later it leased the entire premises, and in 1919 the Ormond Realty Company took the fee title.

The company's business was increasing and expanding during the period 1914–1918; and to acquire additional space the Bedell Company in 1916 rented, by taking an assignment of an existing lease, the adjoining building to the east, No. 17 West Thirty-fourth street, proceeding to occupy the ground floor and part of the basement in connection with its business.

No. 17 West Thirty-fourth street is a five-story building, 25 feet wide and approximately 100 feet deep.   The Bedell Company acquired it by taking an assignment of an existing lease, between Revillon Freres, Inc., and the London Feather and Novelty Company expiring April 30, 1927.

Two years later, January 18, 1918, the Bedell Company leased to the plaintiff the second, third, fourth and fifth floors *and the roof* of No. 17 West Thirty-fourth street for a period of nine years and three months, from February 1, 1918, to April 30, 1927, at an annual rental of $10,000.   This sublease was expressly made subject to the lease from Revillon Freres to the London Feather and Novelty Company, which also expired April 30, 1927.

At the time of plaintiff's sublease, in January, 1918, the Bedell Company was contemplating the erection of a new building covering not only No. 17 West Thirty-fourth street but also the property in the rear, running from Thirty-fourth street to Thirty-fifth street. It was to meet this contingency that the renewal clause was inserted in plaintiff's sublease.

The sublease to plaintiff dated January 18, 1918, is plaintiff's Exhibit 1.   The renewal clause is as follows:

" Twenty-fifth: It is agreed between the parties hereto that *in the event that the landlord secures a renewal of its present lease or*

*at the end of the term makes a new lease* covering the building 17 West 34th Street, the tenant shall have the option of renewing this lease for the renewal period granted the landlord, and if the tenant elects to exercise such option, he shall do so within thirty (30) days from receipt by him from the landlord of written request for decision at to whether or not the option is to be exercised. The terms of such renewal lease of the tenant shall be similar to his present lease, except that if the rent paid by the landlord for the renewal period be different from that now paid by the landlord, then the rent to be paid by the tenant shall bear the same proportion to the rent payable by the landlord under the renewal as the rent payable by the tenant under his present lease bears to the rent payable by the landlord under its present lease.

"*If, however, at least six months prior to the expiration* of this present lease the landlord shall have acquired the premises 17 West 34th Street and shall actually have filed plans for the erection of a new building covering same, and shall have given written notice to the tenant herein of such intention, then the option of the tenant to renew this lease, as above provided for, shall cease.  *  *  *.*"

The essential facts are not disputed.  They are chiefly matters of record established by documents filed in public offices and admitted in evidence.

At the time of plaintiff's sublease in January, 1918, there were two principal obstacles to the erection of the contemplated new building on the expiration of plaintiff's sublease.  One was a lease of possibly forty-two years on No. 17 West Thirty-fourth street, running from the owner, Peck, to Frank Brothers and held by Revillon Freres, whereby the rights of the London Feather and Novelty Company, defendants' assignor, expired April 30, 1927. The other was that Revillon Freres, who occupied the premises in the rear of No. 17 West Thirty-fourth street known as Nos. 26–28 West Thirty-fifth street, had a lease of twenty-one years on that property.

To provide for the imperative need of its expanding business, the Bedell Company proceeded to overcome these obstacles in the following manner:

In 1921 it caused the Ormond Realty Company to acquire from Revillon Freres their outstanding twenty-one-year leasehold on Nos. 26–28 West Thirty-fifth street, by paying them a premium of $500 a month additional rental.  After acquiring the leasehold in the rear, the Bedell Company on May 1, 1923, acquired the lease from the owner of No. 17 West Thirty-fourth street and subsequently terms for sixty-three years were provided for in an agree-

ment between the Bedell Company and the owner, Peck, modifying that lease.

On April 28, 1926, the Bedell Company caused the Ormond Realty Company to file with the department of buildings plans for a new thirteen-story building to occupy the premises No. 17 West Thirty-fourth street as well as the premises in the rear on Thirty-fifth street. These plans provided for demolishing the existing buildings, excavating the site, and removing the east wall of No. 19 West Thirty-fourth street, so as to throw all the floor area of both buildings into common use, at an expenditure of about $700,000. As the plans involved not only the erection of a new building but an alteration of an existing building they had to be and were filed as " alteration plans " under the Building Code. A permit was finally issued by the building department on January 19, 1927.

As far back as 1925 Mr. Bedell had informed the plaintiff that he had decided to put up a new building and endeavored to persuade the plaintiff, for certain advantages, to vacate No. 17 West Thirty-fourth street before the end of his lease on April 30, 1927, but these efforts were unsuccessful.

On May 17, 1926, more than six months before the expiration of the plaintiff's sublease, the Bedell Company served the following notice upon the plaintiff, due service thereof being admitted: " 1. We have acquired the premises 17 West 34th St., (2) We have filed plans for the erection of a new building covering said premises, and intend to erect said building, and consequently (3) in accordance with the provisions of our lease to you of part of 17 West 34th Street, you will not have any option or right to renew said lease and said lease will expire April 30th, 1927."

No attention was paid to this notice until December 2, 1926, when plaintiff wrote the Bedell Company that as it was not the owner *in fee* of No. 17 West Thirty-fourth street, he claimed the right to a renewal.

The plaintiff had during the period of his lease occupied the floor above the ground floor of No. 17 West Thirty-fourth street for his optical business. The upper floors he rented to tenants. The appellant calls attention to the fact that notwithstanding plaintiff's notice to the defendant that he intended to claim a renewal the plaintiff issued to the trade the following notice, which shows he knew his lease had expired:

" You will be pleased to learn that the patronage of our 34th Street branch has grown to such proportions, that we were compelled to seek larger space.

" About the 15th of March, we will move our 34th Street Branch

to 21 West 34th Street, Ground floor — two doors west of our present location — directly adjoining Loft's.

" This greatly increased space and better facilities will enable us to give you the maximum in complete, satisfactory eyeglass service."

All of the other tenants had completely vacated by May 1, 1927, so that the entire building, other than the part used by the defendant, was empty, except that the plaintiff maintained a technical possession. His business was entirely removed, but a telephone operator remained to advise callers where to locate him.

On April 29, 1927, the day before the expiration of the lease, and long after he removed his business from the premises, the plaintiff obtained and served an injunction order on the Bedell Company forbidding interference with his possession and restraining the defendant from instituting summary proceedings to regain possession at the expiration of the lease. As a result the intended extensive building operation has been prevented. All contracts for construction had to be suspended or abandoned.

The plaintiff, respondent, argues for a liberal construction of the first part of the renewal clause, paragraph 25th, urging that the Bedell Company did secure " *a renewal of its present lease.*" That lease was made by Revillon Freres, Inc., to the London Feather and Novelty Company. It expired. The Bedell Company did not " *at the end of the term make a new lease,*" for the reason that before the end of the term referred to, it had caused Revillon Freres, Inc., and Frank Brothers to disassociate themselves from the property, defendant acquiring the original lease from the owner, Peck, to Frank Brothers.

The respondent makes much of the repeated use of the words " renewal lease " in the agreement between the Bedell Company and Peck; but clearly that is not a reference to a lease embraced within the literal meaning of the renewal clause we are considering.

We believe, however, we should not try to give literal effect to the language used. In several places it is virtually impossible to do so; and apart from that, the case should be decided in the light of what was plainly in contemplation when the renewal clause was drafted. Evidently it was contemplated that plaintiff's lease would be renewed if the Bedell Company should not be in a position to build and should have an estate out of which it could make the renewal. The renewal in mind was one under which plaintiff would remain a subtenant of the Bedell Company; for the parties provided for increasing plaintiff's rent proportionately to any increase in the rent of the Bedell Company. Adopting a liberal construction in respondent's favor, we will assume that he would be entitled to

renew if the Bedell Company should be in a position to do so, and did not desire to rebuild.

The plaintiff very lightly passes over the fact that its renewal was conditional on the Bedell Company's not desiring to rebuild, for inability or otherwise. Counsel for defendants, however, point out that the Bedell Company not only had to " acquire " the property, but also had to file plans six months before the expiration of the lease, thus evidencing a *bona fide* desire to rebuild. If the Bedell Company in good faith intended to rebuild, then the renewal privilege was not to be effective to defeat that purpose. Clearly it was contemplated by everyone concerned that if the Bedell Company should be in a position to do so, it might get rid of plaintiff, demolish No. 17 West Thirty-fourth street and erect a new building.

At Special Term it was held that this it cannot do. Moreover, the result there reached implies that we must attempt to adhere literally to language of doubtful meaning imposing conditions on the Bedell Company's rebuilding, and, at the same time, pass over the obviously literal meaning of language imposing conditions on plaintiff's right to renew.

. The dominant and outstanding feature of this case to our minds is that both plaintiff and defendants had in prospect that the Bedell Company might be in a position to rebuild. The parties made their contract in the light of such eventuality and for the very purpose of allowing a new building to be erected if the way could be cleared in other respects.

The plaintiff's case practically stands on the proposition that " acquire " means " acquire in fee simple." To support this, and by contrast with the other provisions of the renewal clause, counsel for plaintiff makes an argument which is not without force, were we free to disassociate a consideration of the case from the main and controlling features of the situation.

Again, if what the renewal clause contemplated was acquisition of the fee and nothing but that, the conditions under which plaintiff could renew could not be (1) " renewal of its present lease," or (2) the making of a new lease at the end of the term. The Bedell Company would take neither course if it owned the fee. But had it taken title in fee, in our opinion it would have been required, out of the fee, to grant plaintiff the renewal if it had not desired to rebuild. We are referring to this part of the argument for plaintiff merely to bring out the inconsistency inherent on any attempt to give the language used a literal meaning throughout and also to bring out what counsel for defendants refers to as the unreasonableness of construing the word " acquire " as meaning solely " a purchase of the fee."

Moreover, acquisition of the fee would not in itself put the Bedell Company in a position to rebuild. It would also have to acquire the lease from Peck to Frank Brothers which had been assigned to Revillon Freres. Furthermore, that is all it had to acquire to make sure of an estate for forty-two years and thus justify its construction of a new building. This being plain, why hold that it had to acquire more than said lease? True, it did acquire another renewal but this only made its position more secure. The plaintiff is not complaining that it " acquired " more than required. The complaint is that it did not acquire as much as it had to, though if it had acquired the fee plaintiff would not, on the basis of the literal meaning of the language employed, be entitled to renew. For rebuilding, ownership of the fee was not only unnecessary, but it was insufficient.

The parties intended that if the Bedell Company could make such acquisition as would warrant its erection of a new building and did in good faith proceed to have one erected, plaintiff was not to be entitled to renew and thus frustrate the plan for a new building.

It is said that the Bedell Company, under the grant it took by assignment from the London Feather and Novelty Company, had the right to rebuild and also the right to renew for long terms. Just what its right to renew was is not very clear. Revillon Freres did not assign to the London Feather and Novelty Company the right to renew. , It agreed to use its best efforts to secure from the owner continuance of possession for renewal periods. Moreover, the owner's consent to an *assignment* to the Bedell Company of the renewal privileges had not been obtained when the lease to plaintiff was made in 1918. This was covered by what was done in 1923. All this remained open when the sublease was made to plaintiff in 1918.

In such a situation it is not fair to say that in 1918 the Bedell Company had the right to rebuild and hold its new building for at least forty-two years. The fair inference from the very clause on which plaintiff relies is that the Bedell Company's position was not such in 1918 as to warrant it in going ahead with a new building; for plaintiff and the Bedell Company stipulated that the Bedell Company should acquire something more before there could be a *bona fide* purpose to rebuild. In urging that the Bedell Company had in 1918 such assurance of continued possession as to warrant its constructing a new building at No. 17 West Thirty-fourth street, plaintiff in effect insists that we shut our eyes to the provisions of the 25th paragraph of his sublease which makes it very clear that in 1918 the parties considered it necessary that the Bedell Com-

pany should acquire some further grant before it could in good faith say it intended to put up a new building.

It is said that in any event the Bedell Company had the right to rebuild under its lease expiring in 1927, out of which plaintiff's lease was carved. The Bedell Company could not rebuild after renting several floors and *the roof* to plaintiff; and no prudent person would build a new building harmonizing with the existing situation on a nine-year term.

It seems wholly immaterial that the Bedell Company acquired title in fee of the Thirty-fifth street property. It was evidently acquiring whatever it could all the way round, in order to clear the way for its new building to cost over $500,000. Because it could acquire the Thirty-fifth street front in fee does not mean that it could not in any other way acquire No. 17 West Thirty-fourth street so as to warrant it in proceeding with the new building.

It is also without force to argue that the building planned for No. 17 West Thirty-fourth street is not a " new " building within the meaning of the renewal clause. The old building had to be completely demolished and the excavation extended. It is of no importance that the municipal authorities require that the plan be labeled as one for alteration because the adjoining building was to be taken in without demolition. We look to what is to be created. It is a *new* building.

An alleged falsity of statement as to ownership in filing plans has no effect. It was a matter doubtless attended to in an architect's practical way. It is all without bearing here; for there can be no question but that the Bedell Company intended in good faith to proceed with the new building.

At Special Term the court put emphasis on the evidence that the Bedell Company did try to purchase the fee of No. 17 West Thirty-fourth street as showing that to have been the meaning of " acquire." The facts are that " acquire " does not necessarily mean " acquire in fee " and that plaintiff took his lease subject to the renewal privilege if the Bedell Company should be in a position to rebuild and would proceed accordingly — exactly what happened. It did not concern plaintiff that the Bedell Company should be willing to build though it might arrange for but sixty-three years of possession instead of unlimited possession in point of time.

The thought of the parties is expressed by the agreement which must be read as a whole, though sufficient effort was not expended to precisely express it. Where substance makes intent so clear, an ill-chosen word should not be seized upon to defeat the purpose of the agreement.

As the Bedell Company would not be so rash as to build on

what it already had in 1918 plaintiff merely stipulated that it acquire enough in addition to render obviously *bona fide* an expression of intent to rebuild.

The judgment should be reversed, with costs, and judgment entered for defendants on the merits, with costs. The findings inconsistent with this determination should be reversed, and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded.

DOWLING, P. J., MERRELL, O'MALLEY and PROSKAUER, JJ., concur.

Judgment reversed, with costs, and judgment directed for defendants on the merits, with costs. The findings inconsistent with this determination should be reversed, and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.