The Bedell Company, Respondent, v. Moses H. Harris, Appellant.

First Department, March 10, 1930.

*Samuel Seabury* of counsel [*Louis Martin Levy*, attorney; *S. Stewart Allan* with him on the brief], for the appellant.

*Clarence J. Shearn* of counsel [*Adolph Bloch* and *Charles C. Smith* with him on the brief; *Shearn & Hare*, attorneys], for the respondent.

MARTIN, J. The defendant, Moses H. Harris, leased from the Bedell Company, the plaintiff, under a lease expiring April 30, 1927, a part of premises No. 17 West Thirty-fourth street, New York city. On that day the appellant was obliged by covenant to surrender possession of the premises to the plaintiff but refused to do so, claiming the right to a renewal of the lease. The defendant continued in possession until the month of June, 1928, when the Court of Appeals affirmed a judgment of this court which decided that there was no renewal right and that the appellant's continued possession was wrongful. (*Harris* v. *Bedell Co.*, 248 N. Y. 611, affg. 222 App. Div. 467.) The plaintiff then brought this action against Harris to recover damages. It is the contention of the plaintiff that two causes of action are set forth in the complaint, one for breach of covenant to restore possession, and the other for use and occupation between April 30, 1927, on which date the lease expired, and June 21, 1928, when the premises were finally surrendered.

Before answering a motion was made by the defendant to dismiss the complaint. That motion was denied. From the order entered thereon this appeal was taken.

The defendant argues that because he remained in possession under a temporary injunction restraining dispossess proceedings and interference with his possession, on a $10,000 bond, followed by judgment at Special Term, notwithstanding the fact that this court reversed the judgment and dismissed the complaint upon the merits, his possession was lawful *ab initio;* that the erroneous injunction bars a recovery of damages for breach of covenant and that the respondent is relegated to the bond or to an action for maliciously obtaining an injunction. It is also contended that the plaintiff has no cause of action separate or apart from that given on the bond, which limits his recovery to $10,000.

The respondent says that the facts upon which the first cause of action is founded are stated in paragraphs 15 and 16 of the complaint, as follows:

" 15. That said lease of January 18, 1918, provided in part as follows:

" ' *Fourth.* That the tenant shall take good care of the demised premises, keep the same in proper sanitary condition, and make all repairs at his own cost and expense, and at the end or other expiration of the term, shall deliver up the demised premises in good order or condition.'

" 16. That the said lease of January 18, 1918, expired at 12 o'clock noon on the 30th day of April, 1927, at which time by the provisions thereof The Bedell Company was entitled to possession of the demised premises, but that the defendant, in violation of his aforesaid covenant, failed and refused to deliver up the demised premises and, without having procured or become entitled to any extension or renewal of said lease and without any right whatsoever so to do and over the protest of The Bedell Company, remained in possession of said premises and refused to surrender possession thereof and give up claim thereto until June 21, 1928."

The complaint then alleges that the cost of construction was greater at the time plaintiff was permitted to proceed than it would have been at the time the defendant should have surrendered possession of the premises; that " by the defendant's aforesaid breach of his covenant to surrender possession of said premises on April 30, 1927, said rental value was lost during the entire period of the delayed completion of said building," and that the plaintiff has been damaged in the sum of $323,699.86 as set forth in a bill of particulars annexed to the complaint. There are many other facts set forth showing that the defendant remained in possession

for at least a portion of the time by virtue of an injunction issued out of the Supreme Court.

The second cause of action alleges that the reasonable worth of the premises for the period during which they were so occupied or retained by the defendant amounted to $42,241.64. The outstanding fact in this case is that possession of the premises could have been obtained by plaintiff at any time except for the injunction.

The question here involved, therefore, relates to the rule of damages to be applied where a preliminary injunction is issued, followed by a trial at Special Term which upheld the contention of the defendant and granted a permanent injunction and a renewal of the lease. Thereafter the judgment was reversed.

We will first consider the damages recoverable under the first cause of action. The appellant contends that the only damage that may be recovered, irrespective of the actual damage suffered by the failure of the defendant to vacate the premises, is the amount provided for by the bond filed when the injunction was granted; that if the plaintiff was not satisfied with the amount of the bond filed at that time his remedy was to apply to the court to increase that amount so that he would be fully protected. No such application was made.

The plaintiff is not suing to recover damages because of the malicious prosecution of the action but for damages alleged to have been occasioned by the failure of the defendant to vacate the premises at the time his lease expired. The plaintiff says that the damage sought to be recovered was caused by the defendant holding over after the term of his lease had ended. There could be no holding over except for the injunction.

The defendant stresses the fact that there was merit to his claim of right to a renewal of the lease and as evidence of good faith shows that the court not only granted a preliminary injunction but after a trial of the issues granted a permanent injunction.

The test to be applied is the good faith of the application and the complaint nowhere questions such good faith. Therefore, the ordinary rule of damages is applicable.

The whole subject of damages has been well considered by the courts in this and many other States throughout the country. It is not a new subject. There are many cases defining the rights of the parties under similar circumstances. There appears to be an unbroken line of cases holding that the damages in such a case are confined to the bond.

In *Palmer* v. *Foley* (71 N. Y. 109) the court said: " Where a party, in good faith, and on a fair presentation of the facts to a court, or to a judicial officer, procures a writ or order of injunction,

he is not liable in an action for the damages which the injunction has caused to the person enjoined. Such is the rule as to any process, or order in the nature of process, thus procured. (*Daniels* v. *Fielding*, 16 M. & W. 200.) Where process sued out by a party is afterwards set aside for error, the party is not liable in an action for damages; where it has been set aside for irregularity, or bad faith in obtaining it, he may be. (*Williams* v. *Smith*, 14 Com. Bench [N. S.] 596; 108 Eng. Com. L. R. 594; see, also, *Miller* v. *Adams*, 52 N. Y. 409; *Carl* v. *Ayers*, 53 id. 14.) "

In the case of *City of Yonkers* v. *Federal Sugar Refining Co.* (221 N. Y. 206) the Court of Appeals said: " There was no liability at common law for damages resulting from an injunction erroneously granted unless the case was one of malicious prosecution. (*Lawton* v. *Green*, 64 N. Y. 326, 330; *Palmer* v. *Foley*, 71 N. Y. 106, 108; *Mark* v. *Hyatt*, 135 N. Y. 306, 310; *Russell* v. *Farley*, 105 U. S. 433; *Meyers* v. *Block*, 120 U. S. 206; *Krzyszke* v. *Kamin*, 163 Mich. 290.) Sometimes the chancellor made his order conditional upon the plaintiff's undertaking to assume the damages. (*Russell* v. *Farley, supra; Smith* v. *Day*, 21 Ch. Div. 421; Chancery Rule [N. Y.] 31.) But without such a condition the defendant had no remedy against the honest and cautious suitor. Public policy was thought to demand that the free pursuit of remedies in the courts should not be obstructed by the menace of liability for innocent mistake.

" The Code requirements for security upon applications for provisional remedies must be read in the light of the rule at common law. Invariably the undertaking is limited to a sum specified by the court or judge. That is true in cases of arrest (Code Civ. Pro. § 559); attachment (§ 640); and injunction (§§ 611, 613, 616, 620). The general rule for injunctions is prescribed by section 620: ' Where special provision is not otherwise made by law for the security to be given upon an injunction order, the party applying therefor must give an undertaking, executed by him, or by one or more sureties, as the court or judge directs, to the effect that the plaintiff will pay to the party enjoined, such damages, not exceeding a sum, specified in the undertaking, as he may sustain by reason of the injunction, if the court finally decides that the plaintiff was not entitled thereto.' (Code Civ. Pro. § 620.) The rule is not changed where the plaintiff signs without sureties. The undertaking is still the source and measure of liability. (*Lawton* v. *Green; Palmer* v. *Foley, supra.*) It is true that the court may increase the amount of an undertaking which is found to be inadequate. (Code Civ. Pro. § 567, arrest; § 629, injunction; § 682, attachment.) "

The history of this subject conclusively shows that the courts have thoroughly considered the effect of such an injunction and the danger of withholding it in a proper case because of the uncertainty of the damage. The amount of damages that may be recovered is now certain and fixed.

In *City of Yonkers* v. *Federal Sugar Refining Co.* (*supra*) the court said: " A plaintiff then has the opportunity, if he thinks the security excessive, to abandon his injunction. In any case, he counts the cost, and assumes a liability whose maximum is a determinate amount."

At common law there was a well-defined distinction with reference to the allowance of damages where the application for the injunction was made in good faith and where the prosecution was malicious. (*Palmer* v. *Foley, supra*.)

The rule at common law that there could be no recovery of damages unless the prosecution was malicious was changed in part by statute which provided for a bond before the applicant could obtain an injunction. Such statutory provisions are now in the Civil Practice Act.

Section 819 of the Civil Practice Act provides that an injunction will not be granted unless the party applying therefor gives security for the protection of the party against whom or whose property the order is to be directed.

Section 893 of the Civil Practice Act provides as follows:

" § 893. Security generally, to obtain injunction order. Except in the cases specified in sections eight hundred and eighty-four, eight hundred and eighty-six, eight hundred and eighty-nine, eight hundred and ninety-one, or where special provision is not made by law for the security to be given upon an injunction order, the undertaking to be given by a party applying for an injunction order, may be executed by him, or by one or more sureties, as the court or judge directs, and shall be to the effect that the plaintiff will pay to the party enjoined, such damages, not exceeding a sum, specified in the undertaking, as he may sustain by reason of the injunction, if the court finally decides that the plaintiff was not entitled thereto."

The argument that the damages sought to be recovered were not occasioned by the injunction is not new. In *Barton* v. *Fisk* (30 N. Y. 166) the Court of Appeals disposed of a similar contention in the following excerpt: " The plaintiff's argument is that the loss was not occasioned by the injunction, but by the tortious act of the plaintiff and his assistant, unconnected with that process. This is too narrow a view of the question. If it had been carried off and converted by a stranger while the owners were prohibited

from doing anything to protect it, the persons who restrained them ought to make recompense for the loss. *A fortiori*, he should make compensation when he himself carried it off and converted it, during the restraint which he had procured to be imposed. The efficient cause of the loss was the inability of the defendants, caused by the injunction, to take care of and preserve that which was their own."

The subject of damages was again considered in *Lawton* v. *Green* (64 N. Y. 326), where it was said: " But I can find no legal authority for sustaining any allowance upon this proceeding, beyond the sum specified in the undertaking. If we regard this as a special proceeding in which, by the act (chapter 270, Laws of 1854), the court may award costs in its discretion, we are met with the difficulty that the whole liability for damages is limited to the sum named. The expenses incurred on such a reference are a part of the damages, and may be recovered as such. (*Aldrich* v. *Reynolds*, 1 Barb. Ch. 613.) " (See, also, *Mark* v. *Hyatt*, 135 N. Y. 306.)

The respondent relies on the case of *City of New York* v. *Brown* (179 N. Y. 303). If that case sustained the proposition asserted by plaintiff, it is not likely there would be a reaffirmance of the principle contended for here by appellant in the later case of *City of Yonkers* v. *Federal Sugar Refining Co.* (*supra*).

The case of *City of New York* v. *Brown* (*supra*) is confined to the proposition there stated, where it was said: " The defendants' first contention is that the plaintiff has mistaken its remedy in seeking to recover damages for the unlawful use and occupation of the pier in question, and that it should have brought an action on the undertaking given by these defendants in the action wherein they were plaintiffs and the city was defendant and in which the injunction above referred to was procured. We think the cases relied upon by the defendants to support that contention have no application here, because this is not a case in which the plaintiff's right to damages arises out of the granting of an injunction, but is based wholly upon the claim of a wrongful use and occupation of its property.

" The use of the pier for dumping purposes was contrary to the provisions of section 845 of the charter (L. 1897, ch. 378), and defendants' occupation thereof was, therefore, unlawful. (*Brown* v. *City of New York*, 78 App. Div. 361; affirmed., 176 N. Y. 571.) Under these circumstances the plaintiff has the undoubted right to recover such damages as it may have sustained by reason of such unlawful use and occupation."

The plaintiff cannot ignore the bond filed when the injunction was issued because it is insufficient to cover all the damages alleged to have been suffered. To so hold would render it entirely too

hazardous for a litigant who believed he had a meritorious cause of action to attempt to protect his rights. If such a result is to be avoided in a case where the injunction is issued in good faith, the measure of liability is the bond.

It does not appear from the complaint whether the injunction continued during the whole period of occupancy by the defendant. It is clear, however, that the injunction remained in force until the judgment was reversed by the Appellate Division, during which period, we have reached the conclusion that the only remedy given to the plaintiff is an action on the bond executed at the time the injunction was issued. It may be that the injunction was in force after that period, but that is not set forth. If no injunction or stay was outstanding after the reversal of the judgment by the Appellate Division, the plaintiff would be entitled to recover damages occasioned by such wrongful possession.

The second cause of action is for use and occupation from the end of the term until the surrender of the premises after the decision of the Court of Appeals. We are of the opinion that the landlord may recover for use and occupation during the entire period including the time when the injunction was in force. The reasonable rental value of the premises is recoverable not as damages but on the theory of restitution. The landlord is limited to the injunction bond in so far as he seeks recovery of damages but a litigant is always entitled to restitution upon the reversal of an erroneous judgment. When the permanent injunction was reversed, he was entitled to the return of his property plus its reasonable rental value during the time of its improper retention. (*City of New York* v. *Brown*, 179 N. Y. 303; and cf. *Golde Clothes Shop* v. *Loew's Buffalo Theatres*, 236 id. 465.) The injunction protects the litigant " from the menace of unknown and unknowable penalties." (*City of Yonkers* v. *Federal Sugar Refining Co.*, 221 N. Y. 206, 212.) It is a shield from unascertainable damages, not a means by which he may unjustly enrich himself. The policy which limits recovery to the injunction bond does not require us to deny the successful litigant restitution of benefits actually received.

For these reasons I think the order appealed from should be affirmed.

O'MALLEY and PROSKAUER, JJ., concur.

MERRELL, J. Under the allegations of the complaint, the truth of which must be admitted upon the motion of the appellant at Special Term, the parties hereto, on January 18, 1918, entered into a written agreement whereby plaintiff leased to defendant the second, third, fourth and fifth floors and the roof of a building

located at 17 West Thirty-fourth street, borough of Manhattan, New York city, for a period of nine years and three months, commencing February 1, 1918, and ending April 30, 1927. The said written lease, in its 4th clause, provided: " That the tenant shall take good care of the demised premises, keep the same in proper sanitary condition, and make all repairs at his own cost and expense, *and at the end or other expiration of the term, shall deliver up the demised premises in good order or condition.*" (Italics are the writer's.)

By the 25th clause of said lease it was agreed between the parties that in the event the landlord secured a renewal of its present lease, or at the end of the term made a new lease covering the building 17 West Thirty-fourth street, the tenant should have the option of renewing said lease for the renewal period granted the landlord. However, the said lease in its 25th clause contained the following provision: " If, however, at least six months prior to the expiration of this present lease the landlord shall have acquired the premises 17 West 34th Street and shall actually have filed plans for the erection of a new building covering same, and shall have given written notice to the tenant herein of such intention, then the option of the tenant to renew this lease, as above provided for, shall cease."

At the time said lease was granted by the plaintiff to the defendant on January 18, 1918, the plaintiff had in contemplation the erection of a new building on the premises at 17 West Thirty-fourth street, and it was the clear intention of the parties at the time of the execution of said lease to the defendant, that if the plaintiff was able to acquire such right of possession to the premises 17 West Thirty-fourth street as would warrant the erection of a new building to accommodate its expanding business, and it, in good faith, should proceed to have such building erected, the defendant was not to be entitled to any renewal of said lease. That the defendant well knew of the contemplation of the plaintiff to erect a new building on the premises 17 West Thirty-fourth street and to cover premises in the rear thereof on West Thirty-fifth street and to be used and operated in connection with the building at 19 West Thirty-fourth street, is alleged in the complaint. In 1921, seven years prior to the expiration of said lease, the plaintiff caused its subsidiary, the Ormond Realty Company, to acquire an outstanding twenty-one year leasehold on the premises at the rear of 17 West Thirty-fourth street. Prior to May 1, 1923, plaintiff acquired said premises, 17 West Thirty-fourth street, as provided in said lease. Following such acquisition, and on or about April 28, 1926, the plaintiff caused its subsidiary, the Ormond Realty Company,

to file with and thereafter to obtain the approval of the department of buildings of the city of New York of plans and specifications for a new thirteen-story, modern building to cover not only the premises 17 West Thirty-fourth street but the premises in the rear thereof on West Thirty-fifth street which had theretofore been acquired for said purpose by the plaintiff in the name of its subsidiary and for the connection of such building with a similar large building adjoining the said premises on the west and running through from Thirty-fourth street to Thirty-fifth street, known as the Bedell Building and for many years occupied by the Bedell Company as headquarters for its business. On or about May 17, 1926, the Bedell Company duly served notice upon the defendant that:

"1. We have acquired the premises 17 West 34th Street;

"2. We have filed plans for the erection of a new building covering said premises and intend to erect said building; and consequently

"3. In accordance with the provisions of our lease to you of part of 17 West 34th Street, you will not have any option or right to renew said lease and said lease will expire April 30, 1927."

It is alleged in the complaint that when such notice was served upon the defendant the plaintiff actually intended and had made all preparations to erect a new building in accordance with said plans.

On April 30, 1927, when the said lease from the plaintiff to defendant by its terms expired, the defendant refused to keep his covenant to deliver up the demised premises at the expiration of the term of said lease. Short of surrendering possession of the leased premises at the expiration of its term, and disregarding the warning served upon him nearly a year prior to the expiration of the term that the plaintiff had filed plans for the erection of a new building on said premises and intended to erect said building, and that, therefore, the defendant had no option or right to renew said lease, the defendant, on April 28, 1927, two days prior to the expiration of his term under said lease, brought action against plaintiff to enjoin it from taking any steps in any proceedings to dispossess the defendant or his subtenants, and from in any way interfering with defendant's occupancy, use and enjoyment of the premises at 17 West Thirty-fourth street, and from interfering with the occupancy, use and enjoyment of said premises by defendant's subtenants, and in said action procured and caused to be served a temporary injunction restraining plaintiff and said Ormond Realty Company, as aforesaid. The complaint here under review must be read in the light of the facts adjudicated by this court upon the appeal of *Harris* v. *Bedell Co.* (222 App. Div. 467). This court

must take judicial notice of the facts as stated in the unanimous opinion therein and its order of reversal made and entered upon the determination of said appeal. That the defendant, in bringing such action and in obtaining such injunction, was not acting in good faith, but for some ulterior purpose, appears clearly from the facts, as established on said former appeal, that the defendant, prior to the expiration of said lease and prior to the commencement of said injunction action, had actually moved his business to another location two doors west of 17 West Thirty-fourth street and next to the Loft Building, and had issued to the trade the following notice, clearly showing that the defendant realized that his lease had expired: " You will be pleased to learn that the patronage of our 34th Street branch has grown to such proportions, that we were compelled to seek larger space.

" About the 15th of March, we will move our 34th Street Branch to 21 West 34th Street, Ground floor — two doors west of our present location — directly adjoining Loft's.

" This greatly increased space and better facilities will enable us to give you the maximum in complete, satisfactory eyeglass service."

Prior to the expiration of said lease and by May 1, 1927, all the other tenants had completely vacated the building, so that the entire building, other than that portion occupied by the plaintiff herein, was empty, except that the defendant maintained a technical occupation. The defendant had entirely removed his business, but kept a telephone operator in the leased premises for the purpose of advising callers where the defendant's new place of business was located.

While plaintiff herein bases its claim for damages upon the failure of defendant to keep his covenant to deliver possession of the premises at the expiration of the leased term, we think, under the circumstances and in view of the clear provisions of the lease, and the further fact that the tenant had transferred his business from the leased premises to another location and only retained a technical occupation of the leased premises by leaving a telephone operator in charge, that the plaintiff would have been justified in alleging in its complaint that the tenant acted maliciously in seeking injunctive relief. However, the plaintiff did not see fit to make such claim, and relies entirely upon defendant's breach of covenant as its basis for damage.

In support of defendant's action for injunctive relief against plaintiff the defendant claimed that the Bedell Company, through its subsidiary, had not, in fact, obtained title to the premises 17 West Thirty-fourth street, but had acquired merely a long-term

lease of said premises held by a prior lessee. In view of the well-known fact that at the present day many of the largest buildings in the city are erected upon premises held under long-term leases, there can be no doubt that plaintiff, in preparation for its contemplated building operations, " acquired " the premises 17 West Thirty-fourth street within the terms of said lease. The defendant ignored the plain provision and intent of the lease, that his right to a renewal thereof would be completely defeated if the Bedell Company, in good faith, contemplated the erection of a new building on the premises to accommodate its new and larger building embracing the premises in question, and the fact that it had filed plans and specifications for such erection which had been approved by the building authorities of the city, and of which the defendant had received due and timely notice. In the injunction action brought by the defendant against the plaintiff and its subsidiary, the Ormond Realty Company, the defendants' answer put in issue the material allegations of the plaintiff's complaint. The issues came on for trial at Equity Trial Term, and the contention of the defendant herein there prevailed and the temporary injunction was made permanent. An appeal from the judgment entered thereon was taken to this court, where, in February, 1928, upon new findings made, this court unanimously reversed the Special Term and granted judgment for the defendants on the merits, with costs. (*Harris* v. *Bedell Co.*, 222 App. Div. 467.) The defendant appealed from the unanimous reversal by this court to the Court of Appeals, and the Court of Appeals, on June 19, 1928, unanimously, without opinion, affirmed the judgment of this court. (*Harris* v. *Bedell Co.*, 248 N. Y. 611.) It was not until after the unanimous affirmance by the Court of Appeals of the judgment of this court reversing that of the Special Term which granted the defendant herein the injunctive relief which he sought, that the defendant saw fit, on June 21, 1928, to yield possession of the leased premises. Immediately upon obtaining possession of the premises the plaintiff, with all possible speed, proceeded with the erection of the contemplated building, but the same was not completed until March 15, 1929, whereas, it is alleged that, but for defendant's aforesaid breach of his covenant to surrender possession of said premises, said building would have been completed on or about December 1, 1927. Plaintiff alleges that subsequent to April 30, 1927, by reason of market changes in the cost of material and labor, the cost of erecting the building covered by the plans filed was materially increased; that in order to permit construction of said building according to the plans filed it was necessary to cause tenants of the lofts in the adjoining

building at 19 West Thirty-fourth street, to vacate said premises, and by reason of the aforesaid delay in beginning construction of said building and due to the uncertainty as to when said building operations could actually commence, said lofts were vacant for more than one year, and the rental thereof lost during said period; that the fair net annual rental value of said new building erected according to the plans filed as aforesaid is at least the sum of $218,375 per annum, and that such was the fair rental value throughout the year 1928; that by defendant's breach of his covenant to surrender possession of said premises on April 30, 1927, said rental value was lost during the entire period of the delayed completion of said building, all to the plaintiff's damage in the sum of $323,699.86. As the result of the defendant's failure to yield possession of the leased premises at the expiration of the lease, expensive contracts into which plaintiff had entered for material and for the erection of said building had to be postponed or entirely abrogated.

In plaintiff's complaint two causes of action are set forth, the first being for damages flowing from the violation by defendant of his covenant to surrender possession of the premises at the termination of the lease. The second cause of action was for the value of the use of the premises in question for the period during which they were unlawfully retained by defendant.

The defendant contends, *first*, that because he remained in possession of the leased premises during a part of the nearly fourteen months after the expiration of his lease under a temporary injunction order restraining the plaintiff from the institution of dispossess proceedings, and because his application for a temporary restraining order was granted upon the execution of a bond for $10,000, and notwithstanding the fact that this court promptly reversed the judgment granted at Special Term and dismissed the complaint on the merits, the defendant's possession of the premises *ab initio* was lawful. In short, it is the contention of the defendant that the injunction order, concededly erroneously granted, bars any recovery of damages for breach of the defendant's covenant to yield possession at the end of his term, and that the plaintiff may only sue upon the bond executed by the defendant in obtaining his injunction order. It is also defendant's contention that the first cause of action is, in fact, to recover damages for the wrongful injunction. As to the second cause of action, the defendant contends that inasmuch as the first cause of action is demurrable, the second cannot be good. The defendant, appellant, contends that plaintiff's demand for damages is, in any event, grossly exaggerated. While the plaintiff herein demands a very

substantial sum as damages, in plaintiff's bill of particulars the items of the damage claimed are set forth in detail. That by reason of the defendant's refusal to deliver possession of the premises leased at the expiration of the term, and in view of the fact that the plaintiff has sustained a substantial loss from vacancies in the building caused in contemplation of the proposed erection, and that a long delay in the commencement of the erection of said building ensued, with increased cost to the plaintiff of material and labor, it would seem that plaintiff was justified in claiming substantial damage. It is alleged in the complaint that all of the damages for which plaintiff seeks to recover were within the contemplation of the parties at the time of the making of the lease. Manifestly, the plaintiff cannot be adequately compensated for the damages which it has suffered as the result of the defendant's breach of covenant by a mere assessment of damages on the $10,000 bond given by the defendant in obtaining his temporary injunction. It would seem absurd to claim that a tenant may avoid the plain covenants of a lease under which he held a mere technical possession of the leased premises to the exclusion of one lawfully entitled to such possession, by rushing into court and by a $10,000 bond tie up an extensive building operation to the landlord's damage in hundreds of thousands of dollars. The question presented here is: Can a party avoid the consequences of a deliberate violation of a covenant to surrender possession of leased premises on a day certain by obtaining a temporary injunction order restraining proceedings for his eviction and, after the courts have set aside said injunction order, claim that he is only liable upon a nominal bond which he gave upon obtaining such temporary injunction? I think not. I think the defendant here willfully violated his covenant to surrender possession of the premises in question at the termination of his lease and for some ulterior purpose retained technical possession of the premises, and that he should be held liable to answer in the damages naturally flowing from his breach of contract. He cannot evade liability by making an unfounded claim of right of renewal and by obtaining a temporary order restraining proceedings to evict him upon the expiration of his term. While unquestionably the plaintiff might have sued upon the bond given on procuring the restraining order, we think the plaintiff, nevertheless, has a right to sue for the damages flowing from defendant's breach of his covenant to deliver possession. It might well have been that through dilatory tactics the defendant could have delayed the establishment of plaintiff's rights over a much longer period than fourteen months, thereby depriving plaintiff of the use of its property and causing a much

greater amount of damage. Can it be said that by obtaining an injunction order, which this court and the Court of Appeals unanimously condemned, the defendant can escape with a mere assessment of damages on the $10,000 bond given on obtaining the temporary restraining order? I think the adjudication of this court dismissing the plaintiff's complaint in the action which the present defendant brought against the plaintiff herein and its subsidiary placed the parties just where they were before the defendant's injunction proceedings were instituted. By the decision of this court the injunction was held to have been improperly granted. By such decision the parties were placed where they were before the proceedings were instituted. (*Hayden* v. *Florence Sewing Machine Co.*, 54 N. Y. 221, 224.) In *Golde Clothes Shop* v. *Loew's Buffalo Theatres* (236 N. Y. 465, 470), Judge CARDOZO said: " When the order was reversed and the proceeding dismissed, rights and duties were re-established, *inter partes,* as if no order had been made. [Citing cases.] "

While there seems to be a paucity of decisions directly on the point raised by the appellant herein, in *City of New York* v. *Brown* (179 N. Y. 303) the Court of Appeals directly passed upon the question here involved. In that case the city of New York leased certain premises to the defendant Brown. Such leasing was in violation of the city charter. Proceedings were instituted to dispossess Brown from the leased premises. Brown then obtained an injunction restraining the prosecution of the dispossess proceedings. The injunction was ultimately dissolved. The city of New York then sued Brown to recover damages for his unlawful use and occupation of the premises. In that action Brown claimed, as does the defendant here, that the plaintiff was relegated to an action on the undertaking given on obtaining the injunction referred to. Judge WERNER, writing for the Court of Appeals in that case, sustained the contention of the plaintiff that it was entitled to recover damages for the unlawful use and occupation of the leased premises, and that plaintiff was not confined to an action on the undertaking given upon obtaining the injunction restraining plaintiff from proceeding against the lessee. Judge WERNER, writing for the unanimous Court of Appeals, stated: " The defendants' first contention is that the plaintiff has mistaken its remedy in seeking to recover damages for the unlawful use and occupation of the pier in question, and *that it should have brought an action on the undertaking given* by these defendants in the action wherein they were plaintiffs and the city was defendant and in which the injunction above referred to was procured. We think the cases relied upon by the defendants to support that contention have

no application here, because *this is not a case in which the plaintiff's right to damages arises out of the granting of an injunction, but is based wholly upon the claim of a wrongful use and occupation of its property.*

" The use of the pier for dumping purposes was contrary to the provisions of section 845 of the charter (L. 1897, ch. 378), and defendants' occupation thereof was, therefore, unlawful. (*Brown* v. *City of New York,* 78 App. Div. 361; affirmed, 176 N. Y. 571.) Under these circumstances *the plaintiff has the undoubted right to recover such damages as it may have sustained by reason of such unlawful use and occupation.*" (Italics are the writer's.) It seems to us that under such decision of the Court of Appeals the plaintiff's complaint herein should be sustained.

The appellant seeks to distinguish *City of New York* v. *Brown* (*supra*) upon the ground that the use by Brown of the pier for dumping purposes was contrary to the Greater New York Charter and that his occupation thereof was, therefore, unlawful, whereas, in the case at bar, the defendant's occupation under the injunction order subsequently reversed was lawful. I can see no distinction whatever in the unlawful possession of Brown under an unauthorized lease and the unlawful retention of possession by the defendant herein in breach of his covenant. That a breach of covenant to surrender implies an *unlawful* withholding of property cannot be questioned. Indeed, in the brief of the appellant herein it is stated: " It is elementary that a breach of covenant to surrender necessarily *implies an unlawful withholding of the property.*" The appellant also seeks to weaken the clear and unequivocal decision of the Court of Appeals, as expressed in the opinion of Judge Werner, by stating that such decision was based on no authority stated in the opinion, and that said decision has never been cited since. It would seem to me that that decision of the Court of Appeals in the *Brown* case is so clearly correct that it was unnecessary to fortify the principle enunciated by any other or prior court decision. The opinion of Judge Werner in the Court of Appeals was concurred in by Chief Judge Cullen and by Associate Judges O'Brien, Bartlett, Martin and Vann. Decisions of the Court of Appeals are not often questioned in inferior courts. Surely the Court of Appeals as constituted at the time of the decision in *City of New York* v. *Brown* would seem to demand the utmost respect for its decisions. The decision of the Court of Appeals in the *Brown* case has never been overruled or its correctness questioned in any reported case to which our attention has been called.

Numerous authorities are cited by the appellant in support of

his contention that the plaintiff may only proceed to recover upon the bond given by defendant in obtaining the temporary injunction. However, an examination of those cases convinces me that they are not applicable to the situation here presented. In each of the cases cited the damages sustained arose out of the granting of an unlawful injunction alone. No other grounds for damages existed. In the case at bar the plaintiff has two remedies. It may sue either for its damages resulting from the defendant's breach of his covenant to surrender, or it may sue for damages upon the bond given by the defendant in obtaining the injunction order. We do not think that the injunction order, afterwards set aside, in any manner affects or destroys the right of the plaintiff to sue for such damages as flow from the defendant's breach of covenant. Had no injunction order been granted, there would not then have been the slightest question that the plaintiff would have been entitled to its damages. We do not think such right of recovery is to be destroyed by the tenant obtaining the injunction order which this court and the Court of Appeals promptly set aside when the matter came before these courts for adjudication. As was said in *City of New York* v. *Brown (supra)*: " * * * this is not a case in which the plaintiff's right to damages arises out of the granting of an injunction, but is based wholly upon the claim of a wrongful use and occupation of its property."

The damages which the plaintiff seeks to recover do not result from the injunction restraining the plaintiff's proceeding to dispossess the defendant, but flow directly from the appellant's failure to deliver up to respondent possession of the property at the time stipulated.

As to the second cause of action alleged in plaintiff's complaint, we think sufficient facts are stated to constitute said cause of action for use and occupation of the leased premises after the expiration of the written lease.

The order appealed from should be affirmed, with ten dollars costs and disbursements, with leave to defendant to answer upon payment of said costs.

DOWLING, P. J., concurs.

Order affirmed, with ten dollars costs and disbursements, with leave to the defendant to answer within twenty days from service of order upon payment of said costs.